FOR THE

## COUNTY OF WINDSOR.

FEBRUARY TERM, 1845.

PRESENT.

HON. CHARLES K. WILLIAMS, CHIEF JUDGE.
HON. ISAAC F. REDFIELD,
HON. MILO L. BENNETT, } ASSISTANT JUDGES.
HON. WILLIAM HEBARD,

## THOMAS S. GORDON *v.* WILLIAM POTTER.

One who trades with an infant, and gives credit to him alone, knowing all the facts in the case, can never, after that, sustain an action against the father of the infant for the articles thus delivered.

A parent is not liable for necessaries furnished to his minor child, unless they are furnished by his authority, express, or implied.

Where the defendant permitted his minor son to go out to work by the month, and the plaintiff delivered to the son certain cloth and trimmings, for articles of necessary clothing, knowing the circumstances, and it did not appear that the father ever expressly authorized the delivery of the articles to the son, it was held that the plaintiff could not recover for them of the father, notwithstanding it appeared that the father knew that the son had purchased the articles, and that he gave the son money to help make up the cloth, and permitted him to wear out the clothes, when made.

Gordon v. Potter.

Notwithstanding judgment to account is rendered against the defendant, in an action on book account, by default, yet, if it appears from the auditor's report, that there is nothing due from the defendant to the plaintiff to balance book accounts between them, judgment upon the report will be rendered in favor of the defendant, for his costs. *Semb.*

BOOK ACCOUNT.  Judgment was rendered against the defendant by default, and an auditor was appointed, who reported, in substance, as follows.

The plaintiff presented an account against the defendant for cloth and trimmings for a suit of clothes, delivered by him, in June, 1841, to Augustus Potter, the minor son of the defendant.  At the time of the sale the son was at work by the month for one Russell, in Shrewsbury, by permission of the defendant,—who resided in Plymouth.  The plaintiff, before the sale, knew where the defendant resided, and was informed by Russell that he was to furnish the son with some clothing, when the time was out for which he was to work, which would be the first of October following, and that, if he, plaintiff, sold the clothing to the son, he could not pay him for them before the first of October.  It appeared that the defendant told his son, in the spring, to go out to work, and that in the fall he would get him some winter clothes; and it did not appear that he refused to get the clothes for his son, but that he neglected to do so.  It farther appeared that the defendant knew of the purchase made of the plaintiff by the son, and that he furnished to the son one dollar in money, with which to pay for making up the clothes, and gave him a part of his earnings, and that he permitted the son to wear out the clothes.

The county court rendered judgment for the defendant, upon the report; to which decision the plaintiff excepted.

*S. Fullam* for plaintiff.

1.  A father is bound to provide for and support his minor children; and if he neglect to do so, and another furnish them, he is bound to pay for the necessaries furnished.  1 Sw. Dig. 41.  *Van Valkenburgh* v. *Watson,* 13 Johns. 480.  So, if he know of the purchase, acquiesce in it, and receive the benefit of it, it is a sufficient consideration for a promise to pay, and the law implies the prom-

Gordon *v*. Potter.

ise. It is the duty of a father to know how his son came by cloth, which he furnishes the means of making into clothes.

2. The Defendant was defaulted in the County Court, and we insist we are entitled to nominal damages, at least.

*T. Hutchinson* for defendant.

There is no pretence that any credit was given to the defendant at the time of the sale; but all was on the credit of the son. See *Rolfe* v. *Abbott*, 6 C. & P. 286, [25 E. C. L. 400;] 1 C. & P. 25, [11 E. C. L. 295.]

The opinion of the court was delivered by

REDFIELD, J. This case presents the question, how far a parent is liable for necessaries furnished to his minor child. The report of the auditor, which is the basis of the judgment below, which we are now revising, seems to leave the case defective in many particulars, as against the father. It does not appear, except by way of inference, that the articles charged were furnished upon the credit of the father, or, in other words, that the plaintiff, at the time they were delivered to the son, expected the father to pay for them. And I take it to be well settled law, that, if one trades with the son, and gives credit to him alone, knowing all the facts in the case, he can never, after that, sustain an action against the father for articles thus delivered. And this is upon the ground, that, if one trade with the agent, and give credit to him personally, knowing of his agency, the principal is not liable.

But there is one defect in the case, which we think must clearly, and indisputably, preclude any recovery against the father. It does not appear that the father ever gave the son any authority, either expressly, or by implication, to pledge his credit for the articles; but the contrary. And unless the father can be made liable for necessaries, for his infant child, against his own will, then, in this case, the plaintiff must fail to recover. I know there are some cases, and *dicta* of judges, or of elementary writers, which seem to justify the conclusion, that the parent may be made liable for necessaries for his child, even against his own will. But an examination of all the cases upon this subject will not justify any such conclusion. Chancellor Kent (2 Com. 191,) says, "During the minor-

ity of the child the parent is absolutely bound to provide reasonably for its maintenance and education, and he may be sued for necessaries furnished, and schooling given to a child, under just and reasonable circumstances." Ch. J. Swift (1 Dig. 41,) uses much the same language. None of the cases referred to by these writers justify the language used. *Van Valkenburgh* v. *Watson* (13 Johns. 480,) is relied upon by both these writers to sustain their position. But the decision in that case was in favor of the father. The court say, indeed, that, had he absolutely refused to furnish necessaries to his minor child, he might be made liable for them, when furnished by a stranger. But the decision involved no such question, and called for no such declaration. Chancellor Kent refers to *Stanton* v. *Wilson*, (3 Day 37,) which, although a Connecticut case, is not adverted to by Ch. J. Swift; from which we conclude he did not esteem it in point. The rule laid down in this last case is broad enough to make the father liable, against his will. " When an infant child elopes (?) from his father for fear of personal violence and abuse, and cannot with safety live with him, the father is liable for necessary support and education, furnished to such child by a stranger." But the case before the court was, where the necessaries had been furnished to the child by consent of the legally constituted guardian, the mother, after a divorce *a vinculo*. Chancellor Kent also refers to *Simpson* v. *Robertson*, (1 Esp. Cas. 17.) But this case merely decides, that the father is not liable for articles of clothing furnished to the son by a tailor, "who colludes with the son, and furnishes him with clothing to an extravagant degree." *Ford* v. *Fothergill* (Ib. 211) is also referred to by Chancellor Kent. But this was a case *against the son*, and the only question moved in the case was, as to the extent of the liability of an infant for necessaries. *Stone* v. *Carr* (3 Esp. Cas. 1,) is likewise referred to by Chancellor Kent. This case only determines the extent of one's liability for necessaries furnished to his wife's children, by a former husband, when they form a portion of his family. No other authorities are referred to, and it is presumed none other exist, or they would not have been overlooked by such an indefatigable reviser as the learned Chancellor, whose opinions are, in our American courts, deemed law, and are sought with almost equal avidity by the proprietors of railroads, and by the impeachers of presidents. But, notwith-

standing the usual accuracy of the learned commentators referred to, it needs no farther argument to show, that their opinion, on this point, is without the support of any decided case.

An examination of the English cases, upon this point, will show, that the parent cannot be made liable for necessaries, furnished to his child, without his consent, either express, or implied. The case of *Bainbridge* v. *Pickering* (2 W. Black. 1325,) is the same, almost, as that already quoted from 13 Johns. 480. But the opinion of the court shows more the sense of the English courts upon the important matter of family government. Guild, J., says, " No man shall take upon him to dictate to a parent, what clothing the child shall wear, at what time they shall be purchased, or of whom. All that must be left to the discretion of the father and mother." In the case of *Baker* v. *Keen*, 3 Eng. C. L. 449, [2 Stark. R. 501,] which was tried before the late Lord Tenterden, then Ch. J. Abbott, it was held, that, when a minor " orders articles, which are necessary to his condition in life, it is a question for the jury, under all the circumstances in the case, whether they can infer an authority given to that effect by the father." The Lord Chief Justice says, " A father would not be bound by the contract of his son, unless either an actual authority were proved, or circumstances appeared from which such an authority might be implied." In *Hack* v. *Tollemache*, 11 Eng. C. L. 296, [1 Car. & P. 5,] it is held, that a " father is not bound to pay for clothing furnished to his son, without some contract, express, or implied, on his part, to do so." Borrough, J., says, " An action can only be maintained against a person for clothes, supplied to his son, either *when he* has ordered such clothes, and contracted to pay for them, or when they have been at first supplied without his knowledge, and he has adopted the contract afterwards." *Rolfe* v. *Abbott* is to the same point ; 25 Eng. C. L. 400, [6 Car. & P. 286.] Baron Gurney told the jury, that, " to charge the father, it is essential that the goods should have been supplied with his assent, or by his authority." In *Law* v. *Wilkin*, 33 Eng. C. L. 193, [6 Adol. & El. 718] the same rule is confirmed, although a new trial is there granted, upon the ground that the case should have been submitted to the jury. From which we conclude such is the acknowledged rule of law in Westminster Hall, or so many of the judges would not be found so unanimous in declaring

it. And it is obvious, that it makes no provision for strangers to furnish children with necessaries, against the will of parents, even in extreme cases. For if it can be done in extreme cases, it can in every case, where the necessity exists; and the right of a parent to control his own child will depend altogether upon his furnishing necessaries, suitable to the varying taste of the times. There is no stopping-place short of this, if any interference whatever is allowed. If the parent abandons the child to destitution, the public authorities may interfere, and, in the mode pointed out by statute, compel a proper maintenance. But this, according to the English common law, which prevails in this state, is not the right of every intermeddling stranger.

The following English cases serve to show still more clearly, the opinion entertained there upon this subject, than the earlier cases. *Blackburn* v. *Machey,* 1 Car. & P. 1, [11 Eng. C. L. 295,] decides that " a father is not liable for clothes furnished to his son, though under age, without some proof of a contract on his part, either express or implied." The proof in that case was, that the son was in want of clothes, and his father did not furnish him with any, or with money, and he obtained them of the plaintiff. Abbott, Ch. J., says, " The question deeply affects society; for if persons in trade are allowed to trust young men, and compel their fathers to pay them, any man, who had a family, might be ruined. A father is not bound to pay for articles ordered by his son, unless the father gives some authority, express, or implied." In *Seaborne* v. *Maddy,* 9 Car. & P. 497, [38 Eng. Com. L. 194,] it is decided, that " no one is bound to pay another for maintaining his children, unless he has entered into some contract to do so. Every man is to maintain his own children, as he himself shall think proper, and it requires a contract to enable another person to do so, and charge him for it in an action." This was as late as 1840, before Mr. Baron Parke. In a note to this case, I find a report of the case of *Mortimore* v. *Wright,* from the London Law Journal, vol. 9, Excheq., p. 158, in which it was decided, in the exchequer chamber, upon writ of error, that a father is not liable for debts incurred by his son, while under age, unless he has given an authority to the son to incur them, or has contracted to pay them; and that the moral obligation he is under to support his children infers no such liability. In that case

45

Gordon *v.* Potter.

Lord Abinger, Ch. B., said, "In point of law, a father, who gives no authority and enters into no contract, is not liable for goods supplied to his son, any more than an uncle, a brother, or a stranger, would be. The mere moral obligation upon a father to maintain his child (which I by no means deny,) affords no inference of a promise to do so. In order to bind a father for a debt incurred by his son, you must prove that he has contracted to be bound, in the same manner you would prove such a contract against any other person; and it ought not to be left to juries to make the law in each particular case, according to their own feelings or prejudices." Baron Parke says, "It is a clear principle, that a father is not under any legal obligation to pay his son's debts, unless he has contracted so to do, except, perhaps, under the 43 Eliz., under which he may, under certain circumstances, be compelled to support his children according to his ability. A mere moral obligation can impose upon him no such legal liability."

In this case all the former cases are elaborately reviewed, and many of them limited and qualified, and the foregoing may be considered the settled law in Westminster Hall, so late as 1840. It need not be remarked how precisely it corresponds with the view we had taken of what the law was, and what it should be. The laws are made and administered by young men far more in this country than in England, but it is to be hoped that will not induce us to depart from so salutary a rule of law, as that giving the father the control of his own household and property. There is full enough disposition of late to subject fathers to the caprices, or the excesses and extravagance, if not the domination, of thoughtless and heartless sons, in concurrence with others, who subsist by deluding and destroying sons, who might otherwise be sober and decent. One could hardly desire to see the tendencies in that direction increased. A father, who supports his family, ought, it would seem, to be consulted as to the mode in which it shall be done; and, if he will not support them, "being of ability," the statute points out the remedy, the same in this state as in England. I know the law is different as to the wife, and there are substantial reasons why it should be. She may always buy necessaries on her husband's credit, if he turn her off, without her fault, or refuse to find her a suitable maintenance at home.                    Judgment affirmed.