## Town of Berlin *v.* Town of Morristown.

A pauper who has come to reside in a town in this state and has become chargeable to such town, may be removed to the town, where he has his last legal settlement, notwithstanding he may be a minor, and have a father, of sufficient ability to support him, residing in another town in the state.

APPEAL, from an order of removal, in due form, of one William Baker, a pauper, from Berlin to Morristown, made by two justices of the peace, pursuant to the statute. Plea, that the said William Baker, at the time the order of removal was made, was a minor, under the age of twenty one years, and the legitimate son of one Hezekiah Baker, of Hydepark, in the county of Lamoille, who was, by law, bound to support the said William Baker during his minority, and was of sufficient ability to do so. To this plea there was a demurrer.

The county court, January Adjourned Term, 1847,—REDFIELD, J., presiding,—adjudged the plea insufficient. Exceptions by defendants.

Berlin *v.* Morristown.

*Heaton & Reed* for plaintiff.

The demurrer is filed, to obtain a decision of the question, whether the town of settlement, Morristown, can compel Berlin, the town to which the pauper has become chargeable, to litigate with the father the fact of the father's ability to support his minor son.

1. To what purpose would Berlin proceed against the father? Berlin is not liable to support the pauper, in any event; they can have no remedy against Morristown for the cost of proceeding against the father; nor would a judgment in such a proceeding be conclusive against Morristown.

2. Since the cases of *Mortimore* v. *Wright*, 6 Mees. & Welsb. 482, and *Gordon* v. *Potter*, 17 Vt. 348, it is certain, that Berlin can proceed against the father only by petition. And that there is a father ultimately liable for the support of the pauper is no reason, why the order of removal should not be sustained. An order of support obtained by petition might fail of being any benefit to Berlin, by reason of the insolvency of the kindred after the order, and would always be subject to the provisions of sec. 20 of chap. 16 of the Revised Statutes; so that it could never insure Berlin against the necessity of an order of removal in the end. So it may be an order for partial support,—which would not prevent a removal. The case of *Bloomfield* v. *French*, 17 Vt. 79, was correctly decided, in its result; but the assumption by HEBARD, J., that French was liable to Newbury in an action at law, was wholly unnecessary, and involves the very doctrine, which it was the object of the reasoning of the court in *Gordon* v. *Potter* to overthrow.

*L. P. Poland* for defendants.

1. Hezekiah Baker, the father, was legally bound to maintain his son, during his minority, and, if he possessed the means to perform that obligation, then there was no occasion for Berlin to call on Morristown. *Ludlow* v. *Weathersfield*, 18 Vt. 39.

2. The defendants insist, that, when a parent neglects to provide his minor child with necessaries, and the minor is supplied by some other person, the law, from these facts, will imply a promise on the part of the parent to pay, and that an action of assumpsit can be maintained upon such implied promise. *Bloomfield* v. *French*, 17 Vt. 79. 1 Bl. Com. 447. 2 Kent 191. 1 Sw. Dig. 41. Reeve's

Dom. Rel. 228, 283. 2 Dane's Abr. 376. *Bainbridge* v. *Pickering*, 2 W. Bl. 1325. *Simpson* v. *Robertson*, 1 Esp. R. 17. *Ford* v. *Fothergill*, Ib. 211. *Stone* v. *Carr*, 3 Ib. 1. *Rawlins* v. *Vandyke*, Ib. 252. *Whipple* v. *Dow*, 2 Mass. 415. *Benson* v. *Remington*, Ib. 113. *Dawes* v. *Howard*, 4 Ib. 97. *Freto* v. *Brown*, Ib. 645. *Day* v. *Everett*, 7 Ib. 145. *Angel* v. *McLellan*, 16 Ib. 28. *Van Valkenbergh* v. *Watson*, 13 Johns. 480. *Stanton* v. *Willson*, 3 Day 37. *Morse* v. *Welton*, 6 Conn. 547. *Hillsboro'* v. *Deering*, 4 N. H. 86. *Rumney* v. *Keyes*, 7 Ib. 571. *Pidgin* v. *Cram*, 8 Ib. 350. It is said, however, that the doctrine of the common law, on this subject, has been overturned by the recent decision of *Gordon* v. *Potter*, 17 Vt. 348. This question was not involved in that case; and whatever may have been said in the case, tending to support such a supposition, was merely *obiter*. The only real question made in that case was, that the credit was given solely to the minor, and not to the father. The most, that can be drawn from the case by Berlin, is, that a father is not bound for necessaries, furnished to his minor child, unless furnished by his authority, *express, or implied*. This is merely the old doctrine of the common law, and is the ground, upon which the father has always been made liable, that the law will imply a promise. Several of the Engish cases, cited in support of the opinion in *Gordon* v. *Potter*, can only be supported on the ground of such *implied* promise, growing out of the parent's neglect to provide,—especially the cases of *Blackburn* v. *Mackey*, 11 E. C. L. 295, and *Law* v. *Wilkin*, 33 E. C. L. 193. See, also, *Nichole* v. *Allen*, 14 E. C. L. 198, and *Cameron* v. *Baker*, 11 Ib. 389.

3. But whether the parent was liable to an action at law, to compel him to maintain his son, or not, he could be compelled to do so, by application to the county court, by virtue of the statute; and if Berlin could have called on the father in that manner, and have compelled him to support his son, they could not remove him.

The opinion of the court was delivered by

DAVIS, J. The material facts presented by the plea filed by the defendant town, and which are relied upon as showing that the removal was not authorized by law, are, that the person removed, William Baker, was, at the time of removal, a minor, under the age of twenty one years, and that his father, Hezekiah Baker, residing

Berlin *v.* Morristown.

in Hydepark, was legally bound to maintain and support him, and was of ample ability to do so. This plea was demurred to; and the question is, whether these facts afford any legal defence against the order.

The pauper, it seems, had become chargeable to Berlin, and the fact, that Morristown was the place of his legal settlement, is necessarily assumed by the pleadings. We are also, I think, to take it for granted, that the character of the residence of the pauper in Berlin was such, as is contemplated by the fourth section of chapter 16 of the Revised Statutes, and not that of a transient person, merely; in which latter case, no compulsory removal can be made. The case furnishes us none of the facts in reference to that point; we only have the adjudication of the two justices, that the pauper had come to reside in that town, and had become chargeable.

If a, minor, having a father living in this state, be not, under any circumstances, a proper subject for a proceeding of this kind, then doubtless the demurrer ought to prevail. This, however, has not been contended for in argument. The line of defence adopted implies, that infancy alone interposes no impediment, although the parent is not comprehended in the process. There would seem to be no doubt on the subject. In England such removals have been made. *Rex* v. *Great Clacton,* 3 B. & A. 410. *Rex* v. *Whitehaven,* 1 D. & R. 384. Birth there confers a settlement, if the parents have none; hence children are often removed from their parents to a distant parish. There is, however, this restriction, suggested by considerations of humanity, that a child, so young as to require the nurture of its mother, cannot be thus separated from her. In one case, *Rex* v. *Bennett,* 2 B. & Ad. 712, even this humane provision seems to have been disregarded, by the removal of the mother from England to Ireland, leaving a child within nurture behind, born in the former country. So a married woman, under some circumstances, may properly be the subject of an order of removal, without her husband, though she cannot ordinarily be separated from him. *Hartland* v. *Pomfret,* 11 Vt. 440. *Northfield.* v *Roxbury,* 15 Vt. 622. *Rex* v. *Leeds,* 4 B. & Ald. 498. *Rex* v. *Eltham,* 5 East 113; in this case the husband and wife both consented. *Rex* v. *Cottingham,* 7 B. & C. 615. A lunatic, also, may be removed. *Randolph* v. *Braintree,* 10 Vt. 436.

73

There is less reason, in this state, for hesitation in admitting the principle, that minors are subject to removal, as it will rarely happen, that it will transfer them to a town, where their parents have not a legal settlement. The case of a woman contracting a second marriage, having children by her first husband, presents the only exception, that now occurs to my mind. In the present case, it is true, the removal was not to the town *in which* the father resided, although, I suppose, it was to the town where his legal settlement was. No farther separation took place, than what existed before.

It only remains to consider, whether the father's ability to support his son presents any valid reason why a removal cannot be made.

This objection might, perhaps, be entitled to somewhat more consideration, were the ground of the order a mere liability of the town to become charged with the support of the person removed, instead of the fact of being actually chargeable; because the father's legal responsibility, in connection with his pecuniary ability, might go far to remove any presumption, arising from other circumstances, that his son would need charitable assistance. The ownership and possession of land has a similar tendency, as observed by Ch. J. WILLIAMS, in *Randolph* v. *Braintree,* 10 Vt. 442; but this alone has not given occasion to the rule, that a person cannot be removed from his freehold; since the rule obtains in all cases, whatever other grounds may exist for the removal.

The principal effort of the defendants' counsel has been, to show, by numerous authorities, that the father of the pauper is under an implied obligation to remunerate the town of Berlin for any necessary expenditures, made on account of the son; and that for the future, as well as the past, relief may be found in that provision of the statute, by which the kindred, within certain degrees, of any person, who has become chargeable, may, on application to the county court by the town charged, be compelled to contribute, if of sufficient ability, to the support of their poor relatives. The first branch of the proposition, it is obvious, could avail nothing, unless it be universally, or at least generally, true. There is more reason to say, that it is universally, or at least generally, untrue. At all events, whether it be true, or false, as applicable to this case, depends upon the circumstances attending the son's residence in Ber-

lin, under which the assistance was rendered,—with none of which does the case make us acquainted.

This point was fully considered by this court in *Gordon* v. *Potter*, 17 Vt. 348; where it was determined, upon a review of most of the authorities, that a father was not liable for clothing furnished to his minor son, who, with his father's consent, was at work from home, —there being no express or implied authority on his part to furnish the articles on his credit. There is no ground whatever for assuming here, that the father either did or said any thing, from which an assent, or promise, can be inferred, that he would pay the plaintiff town for such articles, as they might furnish to his son. It does not appear, as it does in *Gordon* v. *Potter*, that he even knew they were furnished. The whole foundation, therefore, on which this defence is based, fails in the outset, unless it be made to rest upon the second part of the proposition above recited. Here, indeed, the plea presents facts, which will warrant us in saying, that Hezekiah Baker, on application of the town of Berlin, and equally on the application of the town of Morristown, if they have been put to any expenses in support of the son, to the county court of Lamoille county, might have been made liable to an assessment for such expenditures, as had been incurred within the period of six months next preceding the filing of the complaint, and might also have been liable to prospective assessment for future support, to such an amount as might be necessary. Other relatives, besides the father, if of ability, may be comprehended in this proceeding; and it makes no difference, whether the person supported be a minor, or an adult. If other relatives, within the statute limits, are able, and the father be not, the former alone may be charged.

It is, I apprehend, a novel idea, that the existence of this precludes a resort to other appropriate remedies, expressly given by the statute. Nothing in the statute indicates, that an order of removal, wherever otherwise proper, is to be considered as subordinate to this peculiar proceeding, and only to be allowed, when, from want of relatives within the state, or from their inability, no adequate redress can be obtained in this form. I have no doubt, it was competent for Berlin to have proceeded against the father in that manner; and if, with the liberal interpretation given by the courts to the term "sufficient ability," in favor of relatives, the town should have suc-

ceeded, they might have found remuneration for all past expendi-
tures, and perhaps, by a prospective order, have been relieved from
farther expenditures in future. So, too, it may be, that the facts
were such, as to imply a promise, on the part of the father, to reim-
burse the town for any past or future advances in support of the son.
But either of these modes of redress is attended with considerable
expense and delay, and not a little uncertainty as to the result.

Unlike most of the other New England States, the legislature of
this state has provided a farther remedy in behalf of towns, into
which the paupers of other towns may have intruded, that is, by an
order of two magistrates, in the mode adopted here, for the pauper
to remove to the place of his legal settlement; which, if not com-
plied with, is followed by a compulsory removal. It does not inter-
fere with or supersede the other remedies, nor is it in any manner
dependent upon them. Its object is simply to effect a transfer of
persons, whose residence is of the character required by the statute,
and who have either become chargeable, or are likely to become so,
to the place of their legal settlement, where they may be provided
for directly by those, whose duty it is to provide for them. It is a
proceeding, in which the pauper himself, as well as the town, to
which he is ordered to remove, is a party, entitled to notice, and
affected by the result. It is not provided as a substitute, where
other modes of redress prove unavailing; it exists concurrently, if
others exist. Accordingly, it carries with it no remuneration for
past expenditures, or even for the necessary expenses of making the
order and removal; and no costs are taxed, unless upon appeal,
when the proceeding becomes an adversary one. In the event of
the sickness, or death, of the pauper, after the order, a recovery
may be had, by a separate suit, against the town; but there can be
no recovery for expenditures accruing prior to the order. For such
there may, or may not, be a remedy against the father, or other rel-
atives, by suit, or by petition. Such as that is, it remains unaffec-
ted in any way by the order.

From this view of the subject, it is obvious, that the case of
*Hillsboro'* v. *Deering,* 4 N. H. 86, cited by the defendants' counsel,
has no application to the question here, whether duly or unduly re-
moved. In that state, as in Massachusetts, there is no compulsory
removal of paupers. Under certain circumstances, specified in

Berlin *v.* Morristown.

their statute the town incurring expenditures may recover of th e town of legal settlement the amount. One of those circumstances is the *insufficient ability* of the parent. The question turned upon the inquiry, whether certain circmstances in respect to the property of John Mead, father of Sophia, the pauper, which were disclosed, presented a case within the true meaning of the statute; and the court were of opinion, that they did not. The question there has nothing to do with that arising under our statute system of removing paupers. It is not important, therefore, to inquire, whether the rule of construction, adopted by the Supreme Court of New Hampshire in that case was not too severe ; and whether it was not somewhat relaxed in the subsequent case of *Alton* v. *Gilmanton*, 8 N. H. 306.

We think, then, that the fact, averred in the plea, that the father was of ability to support his son, did not necessarily show, or tend to show, that William Baker was not properly subject to be removed. The statement in the record, that he had become chargeable to Berlin, while his legal settlement was in Morristown, together with the fact of his coming to reside in the former town, brings the case clearly within the terms of the statute. There are no suggestions of fraud, or collusion, on the part of the plaintiff town, in reducing the person removed to this situation, or in procuring an adjudication of that fact. The fact, therefore, must be taken to have been shown by competent evidence ; and we think that the facts averred in the plea are in no way inconsistent with the adjudication.

The judgment of the county court is therefore affirmed,

BENNETT, J., dissenting.