ALBANY,<br>January, 1819.<br><br>AIKIN<br>v.<br>DUNLAP.

Judgment of nonsuit.

————⊃※⊂————

AIKIN *against* DUNLAP.

THIS was an action of *assumpsit*. The declaration contained several counts. 1. The first count stated, that, on the 1st of *January*, 1817, the defendant was indebted to the plaintiff in the sum of 5,000 dollars, for so much money paid by the plaintiff to the use of the defendant, to the collector of the customs, for the district of *New-York*, as obligor with the defendant, and as his surety, on three several bonds executed to the *United States* by the defendant, and the plaintiff, as his surety, conditioned for the payment of certain duties, on certain goods, wares, and merchandize, before that time imported into the city of *New-York*, by the defendant. 2. That the defendant was indebted to the plaintiff in the sum of 5,000 dollars, for money paid by the plaintiff to the use of the defendant, for duties due to the *United States*, on certain goods, &c.; and for the payment of which the plaintiff had become security, in manner and form as by the laws of the *United States* was required. 3. The common counts in *assumpsit*, for money paid, money lent, &c.

The defendant pleaded, 1. *Non-assumpsit.* 2. His dis-

By the 65th section of the act of Congress of *March* 2, 1799, *to regulate the collection of duties*, &c. a debt due to the *United States* for duties, is, in cases of insolvency, to be first satisfied; and if the principal obligor on a bond for duties becoming insolvent, the bond is paid by his surety, the surety is entitled to the same preference which the act secures to the *United States*, and might maintain a suit on the bond in his own name: Held, that, admitting that a debt due to the *United States* for duties, is not barred by discharge of

the principal obligor under the insolvent law of a state, (and it seems that it is not,) yet that the preference given to the surety is only the right to be first satisfied out of the effects of the insolvent, in the hands of his assignees, and not a right to maintain an action against the insolvent himself, notwithstanding his discharge: therefore, where the surety brings an action against the principal for money paid to the *United States*, on a bond for duties, the latter may plead his discharge under the insolvent law of this state.

charge, dated the 24th of *September*, 1817, granted by the Recorder of *New-York*, under the insolvent act of the 12th of *April*, 1813.

To the second plea the plaintiff demurred, and the defendant joined in the demurrer.

*T. A. Emmet*, in support of the demurrer, stated three points: 1. That the plaintiff having paid the bond, as *a surety*, was entitled to the same preference as the. *United States* had against the principal debtor.(a)

2. That the discharge of the defendant, under the insolvent act, did not discharge him from this debt.

3. That the insolvent act, under which the discharge was obtained, is unconstitutional and void. 'The last point, he said, he should not argue, though he did not mean to waive it, if necessary to be insisted on.

There can be no doubt, that the defendant was in that state of *insolvency* contemplated by the act of congress. (*Bartlett* v. *Prince*, 19 *Mass. Rep.* 431.) Debts due to the *United States* are not within the. purview of the *insolvent* act, though its language is general. The case must be argued on general principles, for it is peculiar. No analo-

---

· (a) The act of Congress, (5 *Cong*. sess. 1. ch. 128. s. 65.) *to regulate the collection of duties, &c. passed March 2d*, 1799, declares, that " in all cases of insolvency, or where any estate in the hands of the executors, administrators, or assignees, shall be insufficient to pay all the debts due from the deceased, the debt, or debts, due to the *United States*, on such bond, or bonds, shall be first satisfied," &c. And it provides, " That if the principal in any bond, which shall be given to the *United States* for duties on goods, wares, and merchandizes, imported, or other penalty, either by himself, his factor, agent, or other person for him, shall be insolvent, or if such principal, being deceased, his or her estate and effects shall come to the hands of his or her executors, administrators, or assignees, shall be insufficient for the payment of his or her debts, and if, in either of the said cases, any surety on the said bond, or bonds, as the executors, administrators, or assignees, of such surety, shall pay to the *United States* the money due upon such bond, or bonds, such surety, his or her executors, administrators, or assignees, shall have and enjoy the like advantage, priority, or preference, for the recovery and receipt of the said moneys, out of the estate and effects of such insolvent, or deceased principal, as are reserved and secured. to the *United States*; and shall and may bring and maintain a suit, or suits, upon the said bond, or bonds, in law or equity, in his, her, or their own name, or names, for the recovery of all moneys paid therein : And the cases thereof mentioned in the section, shall be deemed to extend, as well to cases in which a debtor, not having sufficient property to pay all his or her debts, shall have made a ' voluntary assignment thereof for the benefit of his or her creditors, or in which the estate and effects of an absconding, concealed, or absent debtor, shall have been attached by process of law, as to cases in which an act of legal bankruptcy shall have been committed."

gous case is to be found in the *English* books. Can a state legislature interfere, in any way, with the debts due to the *United States?* Can it pass an act, expressly discharging a debtor of the *United States?* Can a state take away any rights of the *United States?* Is it not subordinate to the general, or paramount government? Does not the nature of our federative government require such a subordination in the states?

Admitting, even, that the states had such a power, yet this insolvent law does not contemplate debts due to the *United States.* It refers to debts for which the creditors may *petition;* and they are to be paid *rateably,* out of the effects of the insolvent. But by the act of congress, these debts due to the *United States,* in all cases of insolvency, are to be *first* paid. A statute of insolvency is to be construed strictly. (*Callady* v. *Pilkington,* 12 *Mod.* 513.) In *England,* it is held, that the general words of a statute, in which the king is not named, do not bind or bar him. (*Ascough's Case, Cro. Car.* 526.) The king, there, is not barred by the bankrupt acts; and an extent in aid, served before any *actual assignment* to the Commissioners, binds the property of the bankrupt. (2 *Shower,* 280. Sir *Wm. Jones,* 202. 1 *Cook's B. L.* 446. 4 *Term Rep.* 408.)

Now, though no such prerogative is claimed for the government of the *United States;* yet it is a fair and reasonable ground of argument, that the *United States* are not to be affected by such an act, unless expressly named.

*Wells* and *Sampson,* contra. The counsel for the plaintiff has taken it for granted, that the surety is entitled to all the advantages and preference belonging to the *United States,* before the bond was paid. It is not necessary, in this case, to enter far into the discussion of the question, whether the *United States,* as a creditor, would be concluded by this discharge; because this case, being that of a surety, may be distinguished. Why should not the *United States* be bound? The terms of the act, and of the discharge, are broad, and comprehensive enough to include every debt of whatever nature or description. The state government is as much a sovereignty as the *United States;* except so

far as it has expressly delegated any of its powers to the United States. (9 *Johns. Rep.* 576. *Const. of U. S.* 10. *Amend.*) Suppose a citizen of this state contracts a debt to a foreign government, can that government, being a plaintiff here, claim exemption from the operation of this act, on the ground of its being a sovereign power? The act has full operation on all debts whatsoever, contracted in this state. The *United States* do not claim an exemption from the operation of an insolvent, or bankrupt law, on the ground of *prerogative.* Our government claims no *prerogative.* It has no power but what is delegated to it. (*Fisher* v. *Blight,* 2 *Cranch.* 358. 366. 378. *Kempe's Lessee* v. *Kennedy,* 5 *Cranch,* 173. 1 *Tucker's Bl. Comm.* 237.) In *England,* the king is exempted from the operation of a statute, however broad its terms, unless expressly named, solely on the ground of prerogative. (11 *Co.* 68. *b.*) In the case of the *United States* v. *Thompson,* (1 *Gallis. Rep.* 388.) it was held that a bond for the payment of duties to the *United States,* was discharged by the performance of either part of the condition, at the election of the obligor; and that there was no difference between the government and an individual, in that respect.

The mode of distributing the fund, whether rateably, or otherwise, among the creditors, can have no effect on the question as to the discharge of the insolvent. The manner of distribution is a matter between the creditors and the assignees, or trustees, depending on the law of the state or of the *United States.*

It is true, that where the fund is to be distributed, the *United States,* instead of coming in rateably, with the other creditors, must be paid their debt first. This cannot affect the validity of the discharge. Nay, it admits the insolvency, and the discharge. It shows, that congress recognized the insolvent acts of the states, and the discharge of debtors under them, insisting, however, on being paid first, in preference to private creditors.

Again; the plea of a discharge under an insolvent act is to the remedy, and not to the original cause of action. A subsequent promise to pay will revive the remedy. (*Shippey* v. *Henderson,* 11 *Johns. Rep.* 178.) If the *United States*

were to sue, in a state court, would they not be bound by the law of the state, as to the remedy?

Admitting, however, that the *United States* would not be bound by the defendant's discharge, still, we contend, that the plaintiff is bound by it. By the payment of the debt due to the *United States*, that debt was satisfied, and extinguished. The plaintiff stands here, on the common, and ordinary ground, of one person having paid a debt for another, seeking to recover the amount so paid. The government of the *United States*, to encourage responsible men to become sureties for their debtors, and to pay the debts readily, in case the principal failed, devised this expedient. The provision is not to be found in the first act for the collection of duties. It was first introduced in 1792. Then, what is the true construction of the clause? It merely gives the surety the same *preference*, which the *United States* had, to be paid *first* out of the effects of the insolvent, or intestate. It does not, as is contended for on the part of the plaintiff, transfer to the surety all the rights, powers, and privileges of the *United States*, in regard to the principal debtor.

In the case of the *United States* v. *Hooe and others*, (3 *Cranch*, 73, 91.) the Supreme Court held, that if the *United States* claim a lien, or preference, on the ground of the insolvency of the debtor, they must bring themselves strictly within it. In *M'Clean* v. *Rankin & Heyer*, (3 *Johns. Rep.* 369.) this Court decided, that to give the *United States* a preference, it must be a case in which the debtor has assigned *all* his property for the benefit of his creditors. The claim of preference being in derogation of the rule of equity and justice, which puts all the creditors on an equality, ought to be construed strictly.

In the case of *Reed* v. *Emory*, (1 *S. & Rawle's Rep.* 339.) this very question came before the Supreme Court of *Pennsylvania*, and it was decided, that although the *surety* who pays a custom house bond to the *United States*, obtains thereby a *preference*, out of the estate of the bankrupt, he cannot resort to an action against the principal, who has obtained a regular certificate of discharge under the bankrupt law, to recover the money; and that the certificate of

discharge is a bar to the action. The same principle was laid down, by Mr. Justice *Livingston*, in the Circuit Court of the *United States*, in a case recently decided in that court. In *England*, if a debt to the crown is assigned, the assignee may sue in the name of the king, or in his own name ; but if he sues in his own name, he cannot take advantage of the *prerogative* of the crown. (1 *P. Wms.* 252.)

*T. A. Emmet*, in reply, said, that the case of *Reed* v. *Emory*, was that of a discharge under the bankrupt law of the *United States*, and such debts only as could be proved under the commission, are barred. The 62d section of the bankrupt act, passed *April* 4th, 1800, contains an express saving and exception of the rights of the *United States*. (6 *Cong.* sess. 1. ch. 19.) By the 8th section of the first article of the constitution, Congress are empowered, among other things, to lay and collect taxes, duties, imposts, and excises ; and to make all laws which shall be necessary and proper for carrying into execution all the powers vested in the government of the *United States*. Is not the power given to the surety, by the act relative to duties, necessary and proper to ensure the collection of the duties ?

Though the state may be competent to pass an insolvent, or bankrupt law, yet such a law cannot, in any manner, affect debts due to the *United States*. The preference claimed is not prerogative. It is a right inherent in every government, that the debts due to the government, which are for the benefit of the state, shall be paid, in preference to those due to private citizens. This Court is bound to give the same construction and effect to the laws of the *United States,* as a Court of the *United States* would do, if the suit was in such Court. If the *United States* could sue and recover on the bond, notwithstanding the insolvent's discharge, then the surety who has paid the debt has the same right. He stands, in this respect, in the place of the *United States*.

The 19th section of the insolvent act, directs the assignees to make a distribution of the funds among the creditors " whose debts are discharged by this act." Then, *è converso*, no debts are discharged, but such as those for

which the creditor would be obliged to receive his share rateably, under the distribution by the assignees.

PLATT, J. delivered the opinion of the Court. This is an action of *indebitatus assumpsit*, for money paid by the plaintiff to the use of the defendant, viz., to the collector of the customs of the district of *New-York*, as surety for the defendant, in three bonds to the *United States*, for duties on goods imported, &c.

The defendant pleads a discharge granted to him by the Recorder of the city of *New-York*, pursuant to the " act for giving relief in cases of insolvency."

To this plea the plaintiff demurs, and the defendant joins in demurrer. Not deeming it necessary to the proper decision of this cause, I forbear to examine the questions which arise in regard to the form of action, (*assumpsit* instead of *Debt*,) and the want of proper averments in the declaration.

In support of the demurrer, the plaintiff relies on the provisions contained in the statute of the *United States* of the 2d of *March*, 1799, (5 *Cong.* 1 sess. ch. 128. s. 65.) which enacts, that " in all cases of insolvency, or where any estate in the hands of the executors or administrators or assignees, shall be insufficient to pay all the debts due from the deceased, the debt or debts due to the *United States*, on any such bond or bonds, (for payment of duties,) shall be first satisfied, &c ;" and further, " that if the principal in any bond which shall be given to the *United States* for duties on goods, &c. shall be insolvent, or if such principal being deceased, his or her estate and effects, which shall come to the hands of his or her executors, administrators, or assignees, shall be insufficient for the payment of his or her debts ; and if in either of the said cases, any surety on the said bond or bonds, or the executors, administrators, or assignees of such surety, shall pay to the *United States*, the money due upon such bond or bonds, such surety, his or her executors, administrators, or assignees, shall have and enjoy the like advantage, priority, or preference, for the recovery and receipt of the said moneys, out of the estate and effects of such insolvent, or deceased

principal, as are reserved and secured to the *United States;* and shall and may bring and maintain a suit, or suits, upon the said bond or bonds, in law or equity, in his, her, or their own name or names, for the recovery of all moneys paid thereon."

On the argument of this cause, the counsel agitated the question, whether the *United States* are or can be concluded as to their right of action, by virtue of a discharge to an insolvent debtor, under a law of one of the states of our confederacy? In my judgment, that question does not arise upon the case now before us; and the delicacy and importance of the subject forbid any extra-judicial opinion or discussion on that point. Admitting that the *United States* may rightfully claim exemption from the operation of state insolvent laws, as a right incident to our national sovereignty; and admitting, what is *more questionable,* that Congress can transfer to any private person that attribute of sovereignty; yet, I think, there is no ground for the demurrer in the case now before us.

The act of congress before recited, neither asserts such a privilege for the *United States,* nor does it profess to confer it upon any private individual. That section invests a surety, who pays a custom-house bond for his principal, with " the like advantage, priority, or preference, for the recovery and receipt of the said moneys out of the estate and effects of such insolvent or deceased principal, as are reserved and secured to the *United States.*"

What, then, is the advantage, priority, or preference, reserved and secured to the *United States;* and which it was the object of that section to confer on the surety? Looking at the whole section, I think it is plain, that it was intended to grant to the surety nothing more than the right of being " *first satisfied*" out of the insolvent's estate, and which in the former part of the section is expressly " reserved and secured" to the *United States.*

So far from intending to protect the surety against a state insolvent law, as a bar to his claim, the whole scope of the section contemplates a *cessio bonorum* of the insolvent debtor, either voluntary or compulsory, for the benefit of creditors; and in that expectation, congress meant to give

to the surety a preference over all other creditors, out of the estate of the insolvent in the hands of his assignees. The plaintiff, therefore, like every other private creditor, is concluded by the discharge from maintaining his suit against the insolvent debtor ; and must seek his remedy from the estate' in the hands of the assignees. Our insolvent act directs an *equal distribution* among creditors whose debts are discharged. Whether the *preference* given by the act of congress, is to control the rule of distribution in our statute, is a question not immediately before us ; but I incline to the opinion, that our law must be considered as subject to the paramount law of congress, so far as to give effect to the preference secured by that law. It cannot, I think, be doubted, that congress had a right to stipulate for such a preference, in their contracts for securing the public revenue ; and if so, our insolvent law would be an act *in violation of contracts* ; unless it be construed so as to give effect to that stipulation. But I think proper to add, that I fully concur in the opinion expressed by Ch. J. *Marshall*, in the case of *Fisher* v. *Blight*, (2 *Cranch*, 390. and note,) " that no *lien* is created by that act of congress ; that it does not create a *devastavit* in the administration of effects ; and would require *notice*, in order to bind the executor, or administrator, or assignee. "

For the reasons I have stated, and with these explanations, I am clearly of opinion, that the defendant is entitled to judgment on the demurrer.

Judgment for the defendant.