RAYMOND *vs.* LOYL.

There is no legal obligation on a parent to maintain his child, independent of the statutes. Hence a third person who supplies an infant with necessaries, can not maintain an action against the parent therefor, unless the latter has expressly or impliedly *contracted* to pay the amount.

And no promise by the parent can be *implied*, where the infant left his parent's house in disobedience of her express commands, and went to live with the plaintiff, under a contract that he should remain with the plaintiff until he should be twenty-one years of age.

THIS was an appeal from the judgment of the St. Lawrence county court, affirming the judgment of a justice, in favor of the plaintiff. The suit was to recover an account for what were claimed to be necessaries furnished to Andrew Loyl, a son of the defendant, sixteen years of age, consisting of about $14 for clothing, $12 for board two months, books and candles while going to school, three shillings for cash, and a knife. The defendant denied the complaint, and added that her son had worked for the plaintiff, for which she claimed judgment. Witnesses testified that in September the son of the defendant went to live with the plaintiff, where he remained until March; that he was very destitute of clothing when he went there, and the plaintiff furnished him with cloth-

Raymond v. Loyl.

ing to about the amount charged in the declaration, and that he went to school part of the time. There was contradictory testimony as to the value of his labor. One witness testified that the defendant said, in a conversation with him, that "Andrew was her boy, his father was dead ; she had no one to see to him but herself." She said he had been to work for the plaintiff about 7 months, and that she had been to see the plaintiff and get her pay for the boy's work, and she wanted her pay, but the plaintiff refused to pay her; demanded of her $5, and sued her. The defendant moved for a nonsuit, on the ground that the plaintiff was not entitled to recover without proving a request to furnish the articles, or that the defendant had refused or neglected to furnish necessary articles for her minor son. The motion for a nonsuit was denied. One witness for the defendant testified, that Andrew worked for him two years before ; and another, that he worked for him before he went to the plaintiff, and was then at work for him. The son was also sworn for the defendant, and testified respecting his labor, and schooling, &c. He further testified, " my mother was living in Canada at the time I was with the plaintiff." Cross-examined. " Did you go and tell your mother before you went to live with the plaintiff, you had agreed to live with the plaintiff until you was 21 ? Answer. I did. What did she say ? Answer. She said I should not go to live with the plaintiff. But I told her I would. Then she said, if you and Mr. Raymond do not agree, you must have wages. Did you tell the plaintiff what your mother said ? Answer. No, I told him she did not say much of any thing." He further testified to the articles being had by him. The justice gave judgment for the plaintiff for a small amount, which the county court affirmed.

*James & Brown*, for the defendant.

*H. S. Knowles*, for the plaintiff.

*By the Court*, HAND, J.   A parent is under a natural obligation and duty to furnish necessaries for his infant children.

Raymond *v.* Loyl.

(*Reeve's Dom. Rel.* 283. 1 *Bl.* 447. *Van Valkinburgh* v. *Watson,* 13 *John.* 480. *Edwards,* v. *Davis* 16 *Id.* 285. 2 *Kent,* 189.) How that obligation is to be enforced, is not so clear. Spencer, C. J. in *Edwards* v. *Davis,* says, it is a perfect common law duty. And he cites *Reeve's Dom. Rel.* 284, and 1 *Bl.* 448. The court are made to say, in *Van Valkenburgh* v. *Watson,* that if the parent neglects that duty, any other person who supplies such necessaries, is deemed to have conferred a benefit on the delinquent parent, for which the law raises an implied promise to pay, on the part of the parent ; and *Simpson* v. *Robertson,* (1 *Esp.* 17,) and *Ford* v. *Fothergill,* (*Id.* 211,) are cited. An extract is also given from *Bainbridge* v. *Pickering,* (2 *W. Bl. R.* 1325.) And Chancellor Walworth said, *in re Ryder,* (11 *Paige,* 188,) that a stranger may furnish necessaries for the child, and recover of the parent compensation therefor, where there is a clear and palpable omission of duty, on the part of the parent, in supplying a minor child with necessaries. He cites *Van Valkinburgh* v. *Watson.* Chancellor Kent advances the same doctrine, and cites the same case, one in Connecti cut, the two *nisi prius* cases from Espinasse, (*supra,*) and *Stone* v. *Carr,* (3 *Esp. R.* 1.)

Though stated so broadly, and by such eminent jurists, an examination of the cases, throws doubt upon this position. Reeve was not a very careful writer. He cites 1 *Bl.* 446, to show that it is a common law duty of parents to support minor children. Blackstone says, this duty is "a principle of natural law." (1 *Bl.* 447.) That "it is a principle of law, that there is an obligation on every man to provide for those descended from his loins ; and the manner in which this obligation shall be performed is thus pointed out ;" and immediately refers to the provisions of the statutes on the subject. (*Id.* 448.) And adds on the next page, "no person is bound to provide a maintenance for his issue, unless where the children are impotent and unable to work, either through infancy, disease, or accident, and then, is only obliged to find them with necessaries, the penalty on refusal being no more than 20*s.* a month." And Mr. Chitty, in his note, (1 *Bl.* 448 *a,*) says there is no legal obligation on a

parent to maintain his child, independent of the statutes, and therefore, a third person, who may relieve the latter, even from absolute want, can not sue the parent for reasonable remuneration, unless he expressly, or impliedly, *contracted* to pay, and cites Le Blanc, J. 4 *East*, 84 ; *T. Ray.* 260 ; *Palmer*, 559 ; 2 *Stark.* 5§1. He adds that "the common law considered moral duties of this nature, like others of imperfect obligation, as better left in their performance to the impulses of nature." And it is a little remarkable, that, in all the cases cited as sustaining a liability to a third person, without a contract, the point did not arise. In *Simpson* v. *Robertson,* Lord Kenyon ruled that a tradesman, who colluded with a young man, and furnished him clothes to an extravagant degree, could not recover against the father. It does not appear but there was express authority to a reasonable extent. *Ford* v. *Fothergill* was against the infant. In *Stone* v. *Carr,* the defendant stood in *loco parentis* to the son of his wife, who sent him to school in the absence of the defendant. The wife was held to be his agent for that purpose. *Bainbridge* v. *Pickering,* was against an infant. In *Van Valkenburgh* v. *Watson* there had been a recovery for a coat, and the judgment was reversed, because the proof was insufficient in any view. *Edwards v. Davis,* was an action against husband and wife for the support of her parents, and there were, at least, two fatal objections to a recovery. *Ryder's case* was an attempt, in a court of chancery, to make a mother, who had married again, and had a life estate in property to her separate use in the hands of trustees, support a son, capable of supporting himself. It was not a case calling for aid at all, nor had chancery any jurisdiction of the matter. And so with some other cases. *Williams* v. *Hutchinson* was an action against a stepfather for services. (5 *Barb.* 122. 3 *Comst.* 312.) *Shute* v. *Dorr* was an action for services of a child. (5 *Wend.* 204.) *Rawlins* v. *Van Dyke,* (3 *Esp. R.* 250,) was put on the ground that the wife was agent. *Forsyth* v. *Ganson,* (5 *Wend.* 558,) if it can be sustained at all, which is very doubtful, must be upon an express contract to support, and the fact that the defendant possessed a fund set aside for that purpose.

Raymond *v.* Loyl.

It is sufficient, for the present purpose, that it was not a case of an infant.

In England, the liability of the parent, stands solely upon contract. Mr. Chitty, in his work on contracts, says, where a father gives no authority, and enters into no contract, he is no more liable for goods supplied to his son, than a mere stranger would be. (*Chit. on Cont.* 140, *note, Perkins' ed.*) And he is sustained by a strong current of authorities, of which *Mortimer* v. *Wright* is a leading case. (6 *M. & W.* 482.) There Lord Abinger, C. B. said, "in point of law, a father who gives no authority, and enters into no contract, is no more liable for goods supplied to his son, than a brother, or an uncle, or a mere stranger would be." And that "the mere moral obligation on the father to maintain his child, affords no inference of a legal promise to pay his debts." "To bind the father in point of law for the debt incurred by his son, you must prove that he has contracted to be bound, just in the same manner as you would prove such a contract against any other person." And Parke, B. said, a father was under no legal obligation to pay his son's debts, except, indeed, by proceedings under the statute; the mere moral obligation imposing no legal liability. This cause was decided in 1840, and so was *Seaborne* v. *Maddy*, where the same doctrine was laid down at *nisi prius* by Park, B. (9 *C. & P.* 497.) And see remarks of Abbott, C. J. in *Blackburn* v. *Mackey*, (1 *C. & P.* 1;) Burrough, J. in *Fluck* v. *Tollemache*, (*Id.* 5;) Gurney, B. in *Rolfe* v. *Abbott*, (6 *C. & P.* 286;) *Bing. on Infancy*, 87; *note to Am. ed.*; *Gordon* v. *Potter*, (17 *Vt. R.* 348;) *Varney* v. *Young*, (11 *Id.* 260.) Chitty says, his liability in case of desertion is *questio vexata*. (*Chit. on Cont.* 142.) And see *Urmston* v. *Newcomen*, (4 *A. & E.* 899.) In Massachusetts, the father is liable to third persons, perhaps, if the child be expelled, but not if he voluntarily leaves to avoid discipline and restraint. (*Angell* v. *McLellan*, 16 *Mass.* 28.) In this state, and probably in all our sister states, as well as in England, the parent may be compelled by statute to support a minor child; and our statute extends to widows. (1 *R.S.* 614, 615.) The husband is liable, as a general rule, for the debts of

his wife contracted, *dum sola.* But the liability of a husband is different from that of a parent. Yet even that rests upon contract, he taking her *cum onere.* (*See Richardson* v. *Hall,* 1 *B. & B.* 50.) And otherwise the creditor would be remediless. But, at least an express promise is necessary to enforce a mere moral obligation. Indeed the modern opinion seems to be that an express promise, even, is not sufficient. (*Chit. on Cont.* 46, *Perk. ed. and the cases cited in the note. Beaumont* v. *Reeve* 8 *Ad. & E. N. S.* 483. *Eastwood* v. *Kenyon,* 11 *Ad. & E.* 438. *Nash* v. *Russell,* 5 *Barb.* 556. *Geer* v. *Archer,* 2 *Barb. S. C. R.* 420. *Ehle* v. *Judson,* 24 *Wend* 97.) If that be so, my remark to the contrary in *Van Derveer* v. *Wright,* (6 *Barb.* 551,) unless we take Justice Cowen's definition of a moral consideration, (*Tebbetts* v. *Dowd,* 23 *Wend.* 382,) was incorrect; and I am inclined to think a moral consideration insufficient. (*See Smith's L. Ca.* 170. *Sed vide* 1 *Vin.* 270, 284; 13 *Wend.* 511; *Chit. b.* 70, *n. note to Wennall* v. *Adney,* 3 *B. & P.* 250, 16 *John.* 84, *n.*) The case of *Cummings* v. *Brown,* (9 *M. & W.* 496,) was on an express promise. And several cases hold the father liable on a subsequent express promise to pay for necessaries furnished a minor child. (*Blackburn* v. *Mackey,* 1 *C. & P.* 1. *Fluck* v. *Tollemache, Id.* 5.) But these cases if not overruled, perhaps, were supposed to be sustainable on subsequent ratification. However, if a third person can sue in this state, there is no evidence to sustain this judgment. If the testimony of the son is disregarded, there is no evidence of expulsion or desertion of the child; nor that he would not have been well clothed if he had remained with his mother. But the plaintiff himself made use of the son upon this point, and, if the testimony he thus elicited is to be credited, the minor left the home and protection of the defendant in disobedience of her express commands, and went to live with the plaintiff without any pretense that the latter supposed she had consented; and under a contract between the plaintiff and the minor, that the latter should remain with the former, until he was 21 years of age. Perhaps he may be considered as assuming to stand in *loco parentis,* and if so, whether either party to such a contract,

without a breach by the other, has any legal claim, need not now be decided. (*Williams* v. *Hutchinson,* 3 *Comst.* 312.)

It has been said, that a mother is not entitled to the earnings of her children, (*Comm.* v. *Murray,* 4 *Binn.* 487, *citing Wood's Inst.* 64. 1 *Bl.* 453. 1 *Woodes. L.* 451.) And notice must be given by the parent. (*Laws of* 1850, *p.* 579.) It would seem, that Blackstone was speaking of her power during coverture. Her power, if any, perhaps should be referred to that of guardian. Though a minor over 14 may choose his own guardian.

It was said on the argument that "·schooling" is not a necessary. And Mr. Chitty says, *it seems* a parent is not legally bound to educate his child. (*Chit. on Cont.* 140.) A parent is almost the sole judge of what is necessary. But if a parent is liable to a third person, I hope it will never be decided that sending to a common school, at a suitable season, and to a reasonable extent, is not necessary, in this country. However, this cause does not call for a decision on that point.

Judgment of the county court and of the justice reversed.

———•◦•———

SAME TERM.   *Before the same Justices.*