## FRENCH *v.* BENTON.

A town in which a pauper resides is not liable to a physician for services rendered to such pauper without the request of the overseers of the poor, although he became suddenly sick and needed immediate aid, before the overseers could be applied to.

THIS action was brought to recover the amount of a physician's bill for services and medicine rendered and furnished to a poor person, having his settlement in Benton. The defendants denied that the plaintiff was employed by the town or its officers, and the principal dispute in the case related to that question.

In charging the jury the court stated to them that there is no general liability on the part of towns to pay for services or supplies furnished to paupers. They are liable to other towns for supplies furnished by such towns to their paupers, resident in such towns, and standing in need of relief, provided notice is given and suit

brought according to the statute. They are liable to physicians and others for relief furnished to such paupers, in pursuance of an agreement, order, or employment by the overseers of the poor, and not otherwise. But

1. If a pauper falls suddenly sick, and is in immediate need of medical assistance before the overseers of the poor can be applied to, a physician may render the assistance necessary, until there is time to notify the overseers, and charge the town for it.

2. If supplies or medical assistance have been furnished a pauper standing in need of relief, without prior authority, and the overseers are satisfied with what has been done, and promise to pay therefor, the town will be liable.

3. If one of the overseers directed the plaintiff to visit the pauper, who was then sick, as often as he thought was necessary, and the plaintiff exercised a fair discretion as to the frequency of his visits, the town is liable for the assistance rendered.

4. Overseers may employ a physician personally, or they may invest some other person with a discretion to send for a physician when he supposes it is necessary, and the town will be liable.

5. If the pauper had sudden and alarming fits of fainting, so that immediate assistance of a physician was needed, and he attended upon her, he might, on each occurrence of that kind, unexpected, charge the town for one visit without express authority.

To all these instructions the defendants excepted.

A statement in the deposition of N. Willey, that Page, the overseer, requested him to send the plaintiff to visit the pauper, was objected to by the defendants, because it did not appear that the request was communicated to the plaintiff; but it was admitted by the court, as tending to support other evidence of the plaintiff's employment by the overseer.

The plaintiff testified that one Stickney called upon him to visit the pauper, and said that Mrs. Place, at whose house the pauper was supported by the overseer, sent him for the plaintiff. He was then permitted to testify, against the defendants' objection, that Stickney told him that Mrs. Place said she had authority from Page, the overseer, to send for him; and that he (French) gave the credit to the town, and he expected the town to pay him for his services.

The plaintiff was permitted to testify, against the defendants' objection, that Mrs. Place told him, when he went to her house, that Page told her if the pauper needed a physician to send for him. Mrs. Place had previously testified that Page had given her such directions before she sent for the doctor, though that fact was subsequently denied by Mr. Page.

To these rulings the defendants excepted.

A verdict was found for the plaintiff. The defendants moved for a new trial, by reason of said exceptions.

*Morrison,* and *Bryant,* for the plaintiff.

*Hibbard,* and *Felton,* for the defendants.

BELLOWS, J.  The questions arise upon the correctness of the instructions to the jury; and the first position was, that if a pauper falls suddenly sick, and is in immediate want of medical assistance before the overseers can be applied to, a physician may render the assistance needed, until application can be made, and charge the town for it.  To support these instructions no direct authority is cited or found by us; but they are attempted to be sustained upon the ground that there is a legal duty upon the overseers to furnish the relief, whether the town was ultimately liable or not; and, as the emergency was such as not to admit of an application to the town, the law would imply a promise to pay for the assistance needed before an application could be made.

The basis of this argument is, that inasmuch as the duty exists on the part of the town to furnish this specific relief, the services of the plaintiff must be regarded as rendered for its benefit.  And it is likened, in the plaintiff's ingenious and able argument, to the case of the husband or father, who, by a palpable omission of duty— such as turning the wife or child out of doors, and refusing to provide for them — enables them to pledge his credit for necessaries. In regard to the case of the child, there is much conflict in the authorities, but the settled doctrine of the English courts now seems to be, that the moral obligation of the parent to support his minor child imposes no obligation to pay his debts, unless he has given him authority to incur them, and that the contract of the father must be proved, just in the same manner as if he were a brother, son, or stranger.  To this effect is the leading case of *Mortimer v. Wright*, 6 M. & W. 482, decided in 1840; and in the same general direction are the cases cited in 1 Smith's Leading Cases 70, 226, and *Shelton v. Springet*, 11 C. B. 452; 20 Law & Eq. 281.

The early New-York cases held that a clear and palpable omission of duty by the parent would give the child credit, and render the parent liable for necessaries.  *Van Valkenburg v. Watson*, 13 Johns. 480, and several other cases following it, including *In re Ryder*, 11 Paige Ch. 188; 2 Kent Com. 191.  In the later case of *Raymond v. Loyle*, 10 Barb. 483, the cases sustaining this doctrine are examined and questioned, and the conclusion finally reached that there is no legal obligation to maintain a minor son independent of statutes, as held by *Parke*, Baron, in *Mortimer v. Wright*.  The doctrine of *Mortimer v. Wright* is fully sustained by *Redfield*, J., in *Gordon v. Potter*, 17 Vt. 348, where the cases are reviewed.  See also 16 Johns. 281.  The doctrine of *Van Valkenburg v. Watson* is recognized in *Pidgeon v. Cain*, 8 N. H. 350, although the court refused to apply it to that case, as it did also in *Townsend v. Burnham*, 33 N. H. 270.

Without undertaking to decide what is the law of New-Hampshire, it is quite evident that the tendency of the modern authorities is to limit the liability of the parent for necessaries to cases where they are furnished at his request, express, or to be inferred by a jury from the circumstances, upon the general ground as stated in *Bainbridge v. Pickering*, 2 W. Black. 1325; that no one shall take it "upon him to dictate to a parent what clothing a child shall

wear, at what time they shall be purchased, or of whom. All that must be left to the discretion of the father and mother." A similar tendency exists in respect to promises founded upon the consideration of moral obligations; and it may now be considered as settled that such consideration will not be regarded as sufficient, unless a valid legal obligation had once existed, although afterward barred by some statute or positive rule of law. Chit. Cont. 46, and cases; *Cook* v. *Bradley*, 7 Conn. 57; *Mills* v. *Wyman*, 3 Pick. 207; Broom Leg. Max. 476; Story on Cont., sec. 465. The cases of the husband and wife, and parent and child, so far as they go in the direction contended for by the plaintiff's counsel, must be regarded as exceptions to the general doctrine that for a voluntary courtesy, or a service rendered without an antecedent request, no promise to pay can be implied. Neither do they furnish consideration for a subsequent express promise. Story on Cont., sec. 454, and cases cited; *Mills* v. *Wyman*, 3 Pick. 207; *Bartholomew* v. *Jones*, 20 Johns. 28; *Hatch* v. *Prescott*, 21 N. H. 544. And, besides, the principle which sustains these exceptions is not adhered to with such firmness as to indicate any disposition to extend its application.

It is urged, also, that this case comes within the principle of the cases cited in Chit. Cont. (9th Am. Ed. 19), of an implied promise by the husband to pay the funeral expenses of the deceased wife, incurred by a third person in the absence of the husband; and also by an executor, having assets, to pay for the funeral of the testator. In respect to the latter it would seem to be regarded only as a charge upon the assets, and not as the promise of the executor; and so it is intimated in *Thurston* v. *Newcome*, 4 A. & E. 899. But however this may be, these cases, if they can be supported at all, stand upon peculiar grounds of necessity, which can admit of no delay, and are no authorities for a doctrine so broad as that contended for by the plaintiff's counsel. In the case of the husband and wife, before alluded to, the wife and child are not assumed to have the power to charge the husband and parent with necessaries, unless there has been a clear and palpable neglect to provide them. But in the case before us nothing of that kind is shown; not that we mean to say that the result would be changed if it were, but simply that the principle of those cases does not reach this.

It is said, also, that it was the duty of the town to furnish the relief in question, and from that the promise to pay will be implied. It is true that on application to the selectmen it is their duty to investigate the case, and, if the person be a pauper, and in need of relief, to furnish it; and if they willfully refuse they are liable to indictment. But we should hesitate to hold that third persons could revise their judgment, and charge the town for supplies they might think proper to furnish, trusting that a jury might find that the person ought to have been relieved.

It is urged also that the principle of *Lee* v. *Deerfield*, 3 N. H. 290, which gives effect to the request of one of the selectmen to relieve a poor person, in the absence of any evidence of assent or dissent by the others, will sustain this claim. In *Lee* v. *Deerfield*, 3 N. H. 290, the supplies were furnished a pauper whose settlement was in

Deerfield, by the order of one of the selectmen, without any application to the other two; held, *per curiam*, that the assent of the other two is to be presumed, because it is their duty to assent. And the court say that no inconvenience can result from holding that the town shall be bound for proper supplies, furnished on proper occasions, by order of one of the selectmen. And this is cited, without objection, in *Andover* v. *Grafton*, 7 N. H. 305. But *Parker*, J., holds that the principle can not be applied to written contracts or official signatures. In that case the suit was on a note of the town, signed by one of the selectmen for the selectmen of Grafton, and given for supplies furnished a pauper chargeable to Grafton, and held not binding on the town. And it is also laid down that where authority is given to several, in general one of the number can not be substituted. *Andover* v. *Grafton*, 7 N. H. 304, and cases cited. In *Woodes* v. *Dennett*, 9 N. H. 55, *Lee* v. *Deerfield* is recognized, and *Parker*, J., holds that where a person within any town is in need of relief, it is the duty of the overseers of the poor to furnish it. But the court refused to apply the doctrine of *Lee* v. *Deerfield*, where relief was furnished to a poor person in Gilmanton, upon the request of one of the selectmen of Barnstead, to which the pauper was chargeable; holding that the selectmen might wait, if they chose, until legally called in by Gilmanton; and he holds that there was, therefore, no existing duty on Barnstead's selectmen. So in *Glidden* v. *Unity*, 33 N. H. 578, the doctrine of *Lee* v. *Deerfield* and *Woodes* v. *Dennett* is recognized; but a distinction is made between merely formal or ministerial acts, necessarily required to be done in discharge of the duties of selectmen, and those which require consultation, deliberation and judgment; and it is held that to the former the assent of the others may be presumed, but otherwise in respect to the latter. This case, it will be perceived, considerably narrows the application of the doctrine of *Lee* v. *Deerfield*, and in fact in all the cases that have since arisen the courts have declined to apply it. The doctrine of *Lee* v. *Deerfield* was not applied in a case where one selectman signed his own name and that of another selectman to a request to another town to supply a pauper chargeable to the former town, the pauper being in the plaintiff town, assent of the other selectmen not being presumed. *Mason* v. *Bristol*, 10 N. H. 36. In *Otis* v. *Strafford*, 10 N. H. 352, it was held that no individual can recover of a town for support of a pauper, on any implied contract. In this case the selectmen had refused to relieve the pauper, the plaintiff's sister, alleging that he was himself bound to do so; it was held, that no individual can recover against a town for support rendered a poor person, except when expressly employed by the overseers — citing *Lee* v. *Deerfield* and *Woodes* v. *Dennett*. In this case, the pauper was in the defendant town, and chargeable to it; and the court say the selectmen are liable for any gross neglect of duty, but not to remunerate any charitable individual who may relieve such poor person on account of such neglect. See *Miller* v. *Somerset*, 14 Mass. 396; *Mitchell* v. *Converse*, 12 Mass. 333; *Mace* v. *Nottingham West*, 1 N. H. 52, where it is held that no action can be maintained unless given by

statute, or except by virtue of a special contract.    See Story on Agency, sec. 42.

The general drift of all these cases is, that no individual can recover of the town for supplies furnished a poor person, unless at the request of the town ; and although it is held in *Lee* v. *Deerfield* that the request of one may be presumed to be the request of all, in the absence of any proof to the contrary, yet it is manifest, from the subsequent decisions, that the court was inclined to regard that as a case where the one overseer might be presumed to have authority to act for all.    Had the overseers decided that the person ought to be relieved, as may well have been the case, then the act of one might have come within the principle of *Glidden* v. *Unity ;* namely, a merely formal act to carry out the decision of the board, and to which the assent of the others might properly be found by the jury, as, from the head note in *Lee* v. *Deerfield,* was probably intended by that decision.

Upon these views we think the instructions under consideration were erroneous, and of course this will also include the fifth paragraph of the instructions.

The testimony of Stickney and the plaintiff, taken together, tended to show that Page, one of the overseers, had authorized Mrs. Place to call in a physician, and that she had so informed the plaintiff, who acted upon it, and is not, as we perceive, objectionable, although, if the direction to Willey was never acted on, and had no other connection with the case but to show that Page was prepared to relieve the pauper, it would be objectionable.

*Verdict set aside.*