## KELLEY *v.* DAVIS.

A parent is under no legal obligation, independent of statutory law, to maintain his minor child.

The statute applies only to the case of the reimbursement of towns for the support of paupers.

A parent cannot be charged for necessaries furnished by a stranger to his minor child, except upon the promise of the parent, express or implied, to pay for them.

Such promise is not to be implied from an omission of duty, resting in moral obligation, merely.

The law will not imply a promise, against the party's express declaration, except in the case where a positive legal duty is imposed on the party making the negative declaration.

ASSUMPSIT by Alfred Kelley, surving partner of Kelley & Cleasby, against John K. Davis, for goods sold and delivered by the plaintiffs to Gilman C. Davis, the minor son of the defendant, during the winter of 1866, to the amount of $58.33. The plaintiffs sought to charge the defendant on the ground, that the goods sold to said Gilbert were necessaries, suitable to his degree and station in life, and that the father, the defendant should pay for them.

The plea was the general issue, and the case was by consent of the parties tried by the court. It appeared from the plaintiff's books,

and the testimony of said Gilbert, that he had the goods, charged in the account, sued for, that Gilbert was then about seventeen years of age, being at work at the time they were delivered to him, with one Eastman, then at Wentworth in this state. Gilbert testified, that he worked for Eastman, most of the winter of 1866 and '67, driving his team ; that he agreed to work one year, and when he contracted for the goods at the plaintiff's store, expected Eastman to pay for them, but before winter was out he became dissatisfied with Eastman and left him without any assignable reason. " The court finds from the testimony of said Gilbert, that he was a minor when the goods were delivered, and that the plaintiffs knew that fact. That his father had in some form given Gilbert his time, but the plaintiff, Kelley, said he did not know that fact. That among the articles furnished to Gilbert, was a fur collar charged to him at the price of $6.00. This he swapped with Eastman, and gave the one he had to his father, the defendant. He sold one pair of boots he had for money, without wearing them but once or twice. Sold a pair of rubber shoes for half what they were worth. Swapped another pair of boots, and let his brother Silas have the pair he got. Bought a suit of clothes which he says he did not need. Swapped the pantaloons with Whicher, 'I guess I made them an object of' trade.' Had a pair of gloves at the price of $2.50, swapped them with Eastman, &c. 'I am not worth any thing now, and don't expect to be ever worth any thing.' 'I borrowed the money to pay my fare to bring me to court.' The court finds upon the examination of the character of the witness Gilbert—and as the result of the whole testimony, that the plaintiff's account, should be reduced by the amount of $22.42—and thus the balance, amounting to $35.90 with legal interest thereon, is a just claim against the defendant, being for necessaries at a fair price. That the father had sufficient means to yield support to his son when he gave him his time, that he was bound to have furnished him a better education, or more parental care than the son has received, and before he was turned adrift upon the world. And for this failure of duty, which the law properly imposes upon all parents of his ability, the defendant is justly bound to pay the balance as aforesaid of the plaintiffs account."

Whereupon the court rendered their verdict in favor of the plaintiffs accordingly, the said Kelley being now the surviving partner of the late firm, and the defendant moved to set this verdict aside, and for a new trial.

*T. J. Smith*, for the plaintiffs.

*Barnard & Sanborn*, for the defendant.

FOSTER, J. " The duty of parents to provide for the maintenance of their children," says Blackstone " is a principle of natural law." " It is an obligation," says Puffendorf, laid on them, not only by nature herself, but by their own proper act in bringing them

into the world ; for they would be in the highest manner injurious to
their issue, if they only gave their children life that they might after-
ward see them perish.    And thus the children have a perfect *right* of
receiving maintenance from their parents."    " But," says Mr. Wen-
dell in his note 3, to 1 Bl. Com. 448, " the common law of England
never afforded any means of enforcing this right ;" and Mr. Chitty,
in his note to 1 Bl. Com. 458 a, says " there is no legal obligation
on a parent to maintain his child, independent of the statutes ; and
therefore, a third person, who may relieve the latter, even from ab-
solute want, cannot sue the parent for reasonable remuneration, un-
less he expressly or impliedly *contracted* to pay."    In support of this
proposition he cites Le Blanc, J. in 3 East 85, T. Raym, 260 ; Pal-
mer, 559, and 2 Stark 551.

And such, therefore, is the condition of the common law in this
country, *Gordon* v. *Potter*, 17 Vt., 348.    Neither do the statutes of
New Hampshire afford any remedy for enforcing this right, against
a parent so reckless of moral duty as to refuse to recompense a
neighbor who may have relieved the want and suffering of his child.
Our statute laws, like the English statutes of 43 Eliz. and 5 Geo. 1,
from which they were borrowed, are intended only for the indemnity
of the public against the maintenance of paupers, and not for the
reimbursement of an individual who may have relieved the necessi-
ties of a poor person in suffering and distress ; and under our statute
no action can be sustained against a parent to recover for necessaries
furnished to his child, except by the town, and after notice to the per-
son chargeable. Gen. Stats. ch, 74 ; *Farmington* v. *Jones*, 36 N. H.
271.

This view of the matter may, at the first glance, seem startling, as
opposed to our natural sense of justice ;  since the duty of parents to
provide reasonably for the maintenance and education of their chil-
dren, until they shall be of sufficient age and capacity to provide for
themselves is so clearly obvious to the mind and conscience, and so
clearly prescribed by the positive precepts of religion, (for St. Paul
says that " if any provide not for his own, and especially for those
of his own house, he hath denied the faith and is worse than an infidel,")
that a violation of this duty, should, it would seem, be visited
with severe punishment by human laws.

But the reason for this seeming defect in the law, is said by Mr.
Chitty, to be that the common law considered moral duties of this
nature as better left in their performance to the impulses of nature ;
or, as Chancellor Kent remarks, 2 Com. 189, " the obligation of
parental duty is so well secured by the strengh of natural affection,
that it seldom requires to be enforced by human laws."  Paley's Mor-
al Philosophy 226.    Therefore the liability of the parent, in England
and in this country is, as we have seen, founded solely upon contract,
express or implied.

But, nothwithstanding the feeble and scanty provisions of the com-
mon and statute law in this respect, it is held to be an indictable of-
fence on the part of a parent, of sufficient ability, to refuse or neg-

lect to provide sufficient food, bedding &c., to the injury of the health of any infant of tender years, servant, apprentice or child, unable to provide for itself, whom the party is obliged by duty or contract to provide for. *Rex* v. *Friend*, Russ. & Ryan's Cr. Cas. 20 ; *In the matter of Ryder*, 11 Paige Ch. 185.

· On the other hand, the obligation of a parent, where the circumstances are such as to authorize the implication of a promise or contract to pay for necessaries provided by another for his child, is not unrestricted in its requirements but is guarded by wise and reasonable limitations. "For the policy of our laws" (says Blackstone) "which are ever watchful to promote industry, did not mean to compel a father to maintain his idle and lazy children in ease and indolence ; but thought it unjust to oblige the parent against his will to provide · them with superfluities and other indulgences of fortune, imagining they might trust to the impulse of nature, if the children were deserving of such favors." 1 Bl. Com. 449. And by Statute 59 Geo. III ch. 12 § 26, the penalty on refusal of the father to provide such maintaince for his minor children as two justices of the peace shall direct, is no more than twenty shillings a month, though the amount of maintenance is not limited by the amount of the penalty for disobedience, and the father's goods may be distrained therefor.

The legal obligation of the father, therefore, to pay for necessaries furnished a minor child rests upon contract alone ; and where a parent gives no authority, and enters into no contract, he is no more liable to pay a debt contracted by his child, even for necessaries, than a mere stranger would be. Chitty Cont. 166, (10th Am. Ed.) In declaring this proposition the learned author is sustained by a strong current of authorities.

Thus, in *Shelton* v. *Springett*, 20 Eng. L & Eq. 281, it is said, " a father is not liable on a contract made by his minor child, even for necessaries furnished, unless an actual authority be proved, or the circumstances be sufficient to imply one ;" and it is also said, in the same case, that the mere obligation to provide for the child's maintenance, affords no legal inference of a promise.

And in *Mortimer* v. *Wright*, 6 M. & W. 482, Lord Abinger said : " In point of law, a father who gives no authority, and enters into no contract, is no more liable for goods supplied to his son, than a brother, or an uncle, or a mere stranger would be." And that " the mere moral obligation on the father to maintain his child, affords on inference of a legal promise to pay his debts." "To bind the father, in point of law, for the debt incurred by his son, you must prove that he has contracted to be bound, just in the same manner as you would prove such a contract against any other person ;" and Parke B. said a father was under no legal obligation to pay his son's debts, except, indeed, by proceedings under the statute ; the mere moral obligation imposing no legal liability. See, also, *Blackburn* v. *Mackey*, 1 C. & P. 1 ; *Fluck* v. *Tollemache*, id. 5 ; *Rolfe* v. *Abbott*, 6 C. & P. 286 ; *Gordon* v. *Potter*, 17 Vt. 348 ; *Varney* v. *Young*, 11 Vt. 260 ; · *Raymond* v. *Loyd*, 10 Barb. 483 ; *Chilcott* v. *Trumble*, 13 Barb. 502 ; 2 Kent's Com. 190 note 3 (11th ed ).

Although the rule has not been declared in terms so strong and explicit by our own courts, still, we think the decisions in this state are not in conflict, but in accordance, with the rule as heretofore stated and as applied in the cases to which we have referred.

Our courts seem to have followed the decision in *Van Valkenburg* v. *Watson*, 13 Johns. 480, in which it is said that "if the parent neglects that duty" (to furnish necessaries for his infant children) " any other person who supplies such necessaries, is deemed to have conferred a benefit on the delinquent parent, for which the law raises an implied promise to pay on the part of the parent.".

It is obvious here that the necessity for a *contract*—"promise"—is not dispensed with, but expressly declared, in the learned chancellor's view of the case; and the rule as stated by him is shown to be not less stringent than that declared by Abinger C. B., Park B. & Mr. Chitty, when practically applied, for, in the same case, the party furnishing the goods to the minor child is held to the exercise of extreme diligence in inquiring into the condition of the parties, parent and child, before he can ask a jury to find from the circumstances of the case an implied promise on the part of the parent; and, "what is actually necessary," he says, "will depend upon the precise situation of the infant, and which the party giving the credit must be acquainted with at his peril."

And we do not understand the case of *Pidgin* v. *Cram*, 8 N. H. 352 as going to the extent of dispensing with the necessity for a contract or promise on the part of the parent, as the essential foundation of his legal obligation, but only as indicating what circumstances are essential and indispensible to the implication of such promise. It is there said, following the language of the court in *Van Valkenburgh* v. *Watson*, that "in general, a parent is under a natural obligation to furnish necessaries for his infant children; and if the parent neglect that duty, any person who supplies such necessaries is deemed to have conferred a benefit on the delinquent parent, for which the law raises an implied promise to pay on the part of the parent."

The learned Ch. J. Richardson, then continues as follows : "But in order to authorize any person to act for the parent in such a case, there must be a clear and palpable omission of duty in that respect on the part of the parent."

If by the use of these terms the learned chief justice intended to say that the law implies a promise from such a "palpable omission of duty" as is evinced by an absolute refusal, deliberately expressed, to provide for the necessities of his minor children, we should not be able to assent to such a declaration. On the contrary, to use the language of Parsons, C. J, in *Whiting* v. *Sullivan*, 7 Mass. 109, "as the law will not generally imply a promise where there is an express promise, so the law will not imply a promise of any person against his own express declaration; because such declaration is repugnant to any implication of a promise."

But this proposition must be taken with the qualification that

where a *legal* duty—not a mere moral obligation—is imposed upon the party making the negative declaration, the law, (by force of an indispensible fiction,) will imply a promise, even against the party's strongest protestations ; as in the case of taxes, or the claims of a town, founded on the statute, for reimbursement for relieving paupers. "In the civil law, those contracts, which correspond to the implied contracts of the common law, are denominated *obligationes quasi ex contractu*, and Heineccius denies that they are founded on contract." See Metcalf on Contracts 5, 8, 167. See Pot. Obl. 115.

In the case of *Pidgin* v. *Cram*, there was held to be no liability ; and the verdict for the plaintiff was set aside upon grounds thus stated by the court : "Here the daughter was nearly of the age of fifteen, and was residing with her mother when the articles were furnished. She may have been capable of furnishing herself with every necessary, by her own exertions. It does not appear that any application was ever made to the defendant for any assistance. For aught that appears he may have been ready and willing to furnish all that was wanted. The evidence in this case was not, then, sufficient to entitle the plaintiff to a verdict for the supplies furnished to the daughter."

To the same effect is *Townsend* v. *Burnham*, 22 N. H. 277.

In *Farmington* v. *Jones*, Perley, C. J., says : "It does not appear that the support was furnished at the defendant's request, or that he has made any express promise to pay. The plaintiff must rely upon a promise implied in law from the facts stated in the report of the auditor." The claim in that case was for support furnished the defendant's daughter while sick of the small-pox and detained in the house where she was visiting, the same being established as a pesthouse by the officers of the town ; and it was held that the facts were not such as to raise the implication of a promise to pay.

Now, although one of the earlier cases in this state, *Hillsborough* v. *Deering*, 4 N. H. 86 declares (erroneously as we think) the obligation of parents to support their children to be a requirement of the common law, independent of any statute ; it is not apparent that any attempt has ever been made to enforce such obligation, otherwise than upon the ground of a contract or promise on the part of the parent sought to be charged, nor has it ever been claimed that mere moral obligation or duty raises, any implication of a promise or contract.

In *French* v. *Benton*, 44 N. H. 30, Bellows, J., remarks (concerning the assumption of the plaintiff's counsel, in the argument of that cause, that the father by a palpable omission of duty, such as, turning the child out of doors and refusing to provide for him, enables the child to pledge his father's credit for necessaries) that "there is much conflict of the authorities, but the settled doctrine of the English courts now seems to be, that the moral obligation of the parent to support his minor child imposes no obligation to pay his debts, unless he has given him authority to incur them, and that the contract of the father must be proved, just in the same manner as if he were a brother, son, or stranger."

"The early New York cases held that a clear and palpable omission of duty by the parent would give the child credit and render the parent liable for necessaries," citing *Van Valkenburgh* v. *Watson*, and other cases.   "In the later case of *Raymond* v. *Loyle*, 10 Barb. 483, the cases sustaining this doctrine are examined and questioned, and the conclusion finally reached that there is no legal obligation to maintain a minor son, independent of statute."

And he continues as follows : "Without undertaking to decide what is the law of New Hampshire, it is quite evident that the tendency of the modern authorities is to limit the liability of the parent for necessaries to cases where they are furnished at his request, express, or to be inferred by a jury from circumstances, upon the general ground as stated in *Brainbridge* v. *Pickering*, 2 W. Black. 1325, that no one shall take it 'upon him to dictate to a parent what clothing a child shall wear, at what time they shall be purchased, or of whom.   All that must be left to the discretion of the father and mother.'   A similar tendency exists in respect to promises founded upon the consideration of moral obligations ; and it may now be considered as settled that *such considerations will not be regarded as sufficient, unless a valid legal obligation had once existed*, although afterward barred by some statute or positive rule of law."

On the whole, the principles of law applicable to this class of cases seem to take the form of these propositions :   That a parent cannot be charged for necessaries furnished by a stranger for his minor child, except upon a promise to pay for them ; and that such promise is not to be implied from mere moral obligation, nor from the statutes providing for the reimbursement of towns ; but the omission of duty from which a jury may find a promise by implication of law must be a legal duty, capable of enforcement by process of law.

In accordance with these principles, it will be for the jury to say, in a given case, whether all the facts and circumstances warrant the finding of a promise, express or implied.

In reaching a result they will be at liberty, of course, and will be likely to take into consideration all the circumstances connected with the parent's neglect, as indicating his intention, views and purposes with regard to the wants of his child, and the weight and controlling influence of all the evidence, governed by the rules of law as we have endeavored to promulgate them, will undoubtedly seldom fail to result in substantial justice and equity.

Let us then apply these considerations to the case before us.   It is quite apparent from the conduct of the minor with regard to the articles purchased, that a large proportion of them were in no sense necessary for the comfort, support or convenience of the minor at the time they were purchased.   The fur collar, the kid gloves, the rubber shoes, the boots and the trousers were all made "objects of trade" by the young man, and the suit of clothes, he says, he did not need.

The inference from the statement of the case is that these articles were all deducted from the plaintiff's account and that the bal-

ance for which the verdict was rendered, consisted of actual necessaries. But there was no express promise by the father to pay for them, and we are unable, from the facts and circumstances disclosed, to raise any implication of a promise from any clear and palpable omission of duty on the part of the parent.

Indeed the verdict of the court is not placed upon any such grounds but only upon these, namely : That the father had sufficient means to yield support to his son when he gave him his time, that he was bound to have furnished him a better education, or more parental care than the son has received, and before he was turned adrift upon the world. And for this failure of duty, which the law properly imposes upon all parents of his ability, the defendant is justly bound to pay the balance of the plaintiff's account."

We cannot regard these considerations as sufficient to warrant the finding of the court. They may in special instances be worthy of application in the forum of conscience, but we think they cannot be adopted in general practice nor admitted in this particular case. To make the father's liability dependent upon no other conditions than those which are said to be a sufficient foundation for the verdict of the court in this case would be to expose the parent to the ruinous consequences not only of his son's wasteful extravagance and imprudence, but also to the arts of designing and unscrupulous tradesmen. To follow on the analogy suggested between this case and that of *Pidgin* v. *Cram*, before cited : Here the son was seventeen years of age. He was residing with the person whom he contracted to serve, for wages probably sufficient to pay for all his necessary expenses. This fact, and the fact that he was not discharged by his employer but left his service without any assignable reason, shows that he was capable of furnishing himself with every necessity, by his own exertions. It does not appear that any application was ever made to the defendant for assistance. For aught that appears, he may have been ready and willing to furnish all that was wanted.

The evidence was not, than, sufficient to entitle the plaintiff to a verdict for the supplies furnished to the son.

We have paid no attention to the fact that the defendant had " in some form given the young man his time," since the plaintiff was not informed of that fact, and we have not regarded it as material in this case.

*Verdict set aside and a new trial granted.*