## KAUFMAN HARRIS v. LOTTA HARRIS.

### Error from Leavenworth County.

1. HUSBAND AND WIFE: ACTION.—The husband and wife were divorced by the district court of Leavenworth county upon her application, and the custody of the three minor children were awarded to her. Two days after the decree a fourth child was born. In an action of debt brought against the father for the entire support and education of all the children by the mother: *Held*, that she could not recover in such action.

2. MAINTENANCE: REMEDY.—That the only way for relief was by opening the decree as to the children, and making such provision for them as might be just under all the circumstances, or by other proper proceedings under or supplemental to the original decree.*

The facts of the case sufficiently appear in the opinion of the court.

*Pendery & Brewer*, attorneys for plaintiff in error.

*A. M. Sawyer*, attorney for defendant in error.

*For plaintiff in error*, it was contended:

1.   A father is not liable to third persons who furnish necessaries to his minor children. 17 *Verm.*, 348; 1 *Blackst. Com.*, 448; 4 *East*, 76; *Bishop on Mar. and Div.*, § 632; 3 *Scam.*, 179; *Chitty on Cont.*, 140; 10 *Barb.*, 483; 13 *Barb.*, 502; 9 *Casey*, 50; 1 *Smith's L. C.*, 227; 20 *Eng. L. & Eq.*, 281.

2.   At any rate a divorced wife can maintain no action at law against him for the maintenance of their joint offspring. 22 *Conn.*, 411; 13 *Johns.*, 192; 29 *Barb.* 124; 6 *Abbott's Dig.*, 420, § 6; 10 *Cush.*, 41; *Bishop on Mar.*

---

* COMMON LAW:—By the common law a power is given to enforce the natural obligation resting upon the parents of minor children, as between them and the community, to support them; but this obligation is one resting upon the mother and father alike. A stranger cannot, without a contract, assume the obligation and in an action against the parents, recover for the maintenance.

*and Div.*, § 639; 3 *Gilman*, 435; 2 *Story's Eq. Jur.*, § 1341; 22 *Eng. L. & Eq.*, 395.

3. The statutes of Kansas concerning "divorce and alimony" declare that the court, rendering a decree of divorce, "shall make such order for the disposition, care and maintenance of the children of such marriage, if any there be, as shall be just and reasonable." And the court granting this divorce, having in its decree taken action under the provisions of this clause, it will be presumed that it has taken all the action that was then proper, and that decree will be conclusive as to the mutual rights and obligations of the parties, subject only to the right of either party to make application to that court in that case for such modifications of its orders and decree as subsequent exigencies may require. *Comp. L.*, 474, § 4; *Hopkins' Ch.*, 584; 19 *Ill.*, 353; 22 *Ill.*, 425; 15 *Iowa*, 423.

4. Where independently of the proceedings in the divorce suit, the father has conveyed to the mother by mutual agreement all of his property for the support of their joint offspring, the same being sufficient therefor, the fact that such property afterwards is lost or destroyed by fire or other unavoidable accident, does not impose a new obligation on the father to make good the loss.

*A. M. Sawyer, for defendant in error,* submitted:

1. A father is bound to support his minor children, if he be of ability to do so. 1 *Black. Com.*, 446; 2 *Kent. Com.*, 190; *Staunton v. Willson*, 3 *Day*, 37; *Tompkins v. Tompkins*, 3 *Stockton*, 512; *The mother of Ryder*, 11 *Paige*, 185; 4 *Edw. Ch.*, 338; *Van Valkenburgh v. Watson*, 13 *John.*, 480; *Leavitt v. Leavitt*, *Wright*, 719; *Cowles v. Cowles*, 3 *Gil.*, 435; *Edwards v. Davis*, 16 *John.*, 281; *Eitel v. Walter*, 2 *Bradf.*, 287; *Reeve's Domestic Relations,*

283 ; *Gill v. Reed*, 5 *Rhode Island*, 343 ; *Rumney v. Keyes*, 7 *New Hamp.*, 571; 41 *Barbour*, 558; 2 *Cush.* 353 ; 33 *N. Hamp.*, 277 ; 40 *Maine*, 152.

2. Courts enforce this duty so rigidly, that if a father be of sufficient ability to maintain his minor children, they will not order an allowance to the parent out of the children's separate estate. *In the matter of Kane*, 2 *Bar. Ch. R.*, 375 ; *Haase v. Roerscheid*, 6 *Ind.*, 67; *Addison v. Bowie*, 2 *Bland*, 619; *Lusk v. Lusk*, 28 *Wis.*, (7 *Jones*,) 91.

3. A divorce does not change his duty towards his children nor relieve him from his obligations to support them. 2 *Bishop Mar. and Div.*, § 555, (644), § 552, (640); *Marlborough v. Hebron*, 2 *Conn.*, 20; *Stanton v. Willson*, 3 *Day*, 37 ; *Cowles v Cowles*, 3 *Gil.*, 435.

4. The law may require a father to support his children after he has forfeited his right to their custody or control. *Macpherson on Infants*, 142; *Cowles v. Cowles*, 3 *Gil.*, 435.

5. When a divorce is granted pursuant to the prayer of the wife for the fault of the husband, as in this case, and the custody of the children is given to her, the rule in respect to their support applies to the husband that no man shall profit by his own wrong, and to the wife that no one shall suffer for doing right. In pursuance of which the husband will be charged with the full burden of maintaining the children committed to the wife's care. The court, in placing the children under the charge of the mother, means to impose no burden of a pecuniary character upon her. 2 *Bishop, Mar. and Div.*, §§ 555, (644), 552, (640); *Richmond v. Richmond*, 1 *Green, Ch.* 90.

*By the Court,* KINGMAN, C. J.

The petition in this case alleges that the defendant below (plaintiff in error) is the father of these minor children, Eva, Rosalie and Jeanette; that he had neglected and refused to support them for three years before the commencement of the action; that the plaintiff had supported them, and that the maintenance was worth a certain sum for which she claimed judgment. The facts as shown in the testimony are briefly these: On January 2, 1861, Lotta Harris, the plaintiff below, obtained a decree of divorce from her husband. That decree gave her " the custody, nurture, education and care of these children, Herman, Eva and Rosalie, and enjoined him from interfering therewith until the further order of the court. Two days after the decree Jeanette was born. After the decree and after the birth of Jeanette, Kaufman Harris caused his entire property, consisting of two stores and a leasehold interest in the ground on which they stood, in the city of Leavenworth, to be conveyed to Lotta Harris. In March, 1866, these buildings were burned down. From the rents of these buildings, Lotta supported herself and children till they were burned; afterwards by keeping boarders and by her labor, and perhaps by aid from others. She continued to support them, and brings this action to recover of Kaufman Harris the cost of supporting the children for three years before the commencement of the suit.

The district court instructed the jury that she could recover for the support of the children born after the decree only, and a verdict for $175 per year was rendered.

To reverse that judgment the case is brought to this court.

MAINTENANCE: Husband and wife.  The instructions of the court below so far as we are called upon to examine them, were based upon the assumption that the law imposes upon the father absolutely and entirely the obligation to support and educate his minor children, and that whoever may assume that duty, can hold the father responsible for the value thereof by a suit at law. If the mother might recover in this case so might a mere stranger.

COMMON LAW: Doctrine.  Is this the law? Our statutes, so far as we are aware, leave this obligation of the father, as at common law, a natural obligation to support, protect and educate the child he has brought into existence, with a power in the appropriate tribunal to enforce the obligation as between the father and the community. [1 *Black. Com.*, 448.] But this obligation rests equally upon the mother, and this whether it be regarded as a legal or natural duty; originally it was a purely natural obligation, resting upon both parents alike. At an early period a sanction was added to this natural duty by the statute, 43 Eliz., ch. 2, which directs that " the father and mother, grandfather and grandmother, of poor, impotent persons, shall maintain them, if of sufficient ability, as the quarter sessions shall direct." [*Black. Com.*, 448.] This statute being in aid of the common law, and to enforce a natural duty, is adopted in this State by statute. [*Comp. Laws*, 678.]

PARENT AND child.  This statute makes it alike the duty of the mother, as of the father, to support their children, and applies only to those unable to support themselves, whether they be minors or not, and makes this duty dependent upon the ability of the ancestor to discharge it; without this ability there is no legal liability. While the relation of husband and wife continues, this

legal obligation rests pecuniarily upon the father, but if
he be poor, and unable to work, and his wife have a large
separate estate, it would hardly be said that the obligation
did not rest also on her.

With this obligation on the part of parents arise ac-
companying rights, and among these is that of the parent
to the society, comfort, obedience and service of the child.
Can a stranger take these from a parent, and then com-
pel him, by suit at law, to reimburse him for what he
may deem fitting care and education of his child? This
would not be just, neither is it law. In the case of Sea-
borne v. Maddy [38 *E. C. L.*, 194] it is decided "that no
one is bound to pay another for maintaining his children,
unless he has entered into some contract so to do; every
man is to maintain his own children as he himself shall
think proper, and it requires a contract to enable another
person to do so, and charge him for it in an action."
The same general principle is adhered to in the case of
Shelton v. Springett [20 *Eng. Law and Eq.*, 283;] and
the doctrine in its whole length and breadth was upon
full discussion and examination of the law and authori-
ties, adopted by the supreme court of Vermont, [17
*Verm.*, 348;] and in Connecticut, [22 *Conn.*, 412;] in
which the court annulled a previous decision of the su-
preme court of that State, on this point; and in Massa-
chusetts, [10 *Cush.*, 41;] and in New York, [13 *Barb.*,
502; 10 *Barb.*, 483.] In the case of Gordon v. Potter
[17 *Verm.*, 348,] REDFIELD, J., after ably reviewing the
authorities on the question observes: "It is obvious that
the law makes no provision for strangers to furnish chil-
dren with necessaries, against the will of parents, even in
extreme cases; for if it can be done in extreme cases, it
can in every case where the necessity exists, and the right

of a person, to control his own child, will depend altogether upon his furnishing necessaries suitable to the varying taste of the times. If the parent abandons the child to destitution, the public authorities may interfere and, in the mode pointed out by the statute, compel a proper maintenance; but this is not the right of every intermeddling stranger."

We are aware that in many cases, quite a number of which have been cited by the defendant in error, courts have declared that a father is bound to support his minor children, if he be of ability to do so, but in the most which we have had an opportunity to examine, the question raised in this case was not before the court, and the general declaration of such a principle, without limitation or qualification, sufficiently shows that the attention of the court had not been given to the question. No one supposes that a father, poor and infirm, is bound to support a healthy, robust son, of eighteen, though he be a minor, except as he has a right to his services, and of control over his actions; or that any father is dependent upon the changing fashions and varying tastes of the hour in determining what is best for his child; nor does any one suppose it is more the duty of the father than of the mother to support the children; both are alike entitled to the love, society, obedience and services of their offspring; they are alike interested in their welfare, and in deciding what is best calculated to promote it with reference to their ability and means, and also to their other duties to themselves and to others. It it true, that while the coverture exists, the legal responsibility, so far as strangers are concerned, may rest exclusively with the father. It is not necessary to determine that in this case. But as between themselves and the children, the duty is

as much that of the mother as the father. Our constitution declares that the legislature shall provide for the equal rights of the wife as of the husband in the possession of their children, and it is a known fact that courts are apt to lean towards the mother as far as may be when a separation is decreed. This is as right as it is natural.

In the case before us, the court held it to be exclusively the duty of the father to maintain the child born after the divorce. This was error. Nor do we think the plaintiff below was entitled to recover anything under the facts set up in the petition.

REMEDY.　　　Whatever rights she may have under the unfortunate circumstances of the case, can only be obtained by opening the decree in the divorce case, or by proceedings based thereon, in which the court can take into consideration all the facts and circumstances surrounding the parties, and do such full justice as the case requires, having reference to advances already made. In such proceedings equal justice may be done to all parties according to their abilities, and according to the interest of the children, and so as to protect the father from continued and harrassing litigation. For if a suit could be maintained of the character of the one before us, a suit could be maintained each day, and the defendant would be powerless. If he offered liberal terms, they might be rejected and be made liable to some other party who might assume the duty of maintaining the child. The suit we indicated as appropriate would make a final as well as a just settlement of the case. The case must be reversed.

All the Justices concurring.