GEORGE H. MILLER v. KETURAH V. MORRISON *et al.*

DIVORCE — *Alimony — Agreement — Judgment, Satisfied.* A decree of divorce was rendered and the custody of a minor son was given to the mother, and the father was required to pay to the mother $300. Of that amount $200 was afterward paid, and afterward the father and mother entered into an agreement that if the father would take the care and custody of the minor son, the mother would relieve him from the payment of the other $100 still remaining due and unpaid; and the father in pursuance of such agreement did take such son under his charge, and continued to support and maintain him. *Held,* That the agreement was valid, and that these transactions had the effect to pay, satisfy and discharge the judgment for the remaining $100.

*Error from Atchison District Court.*

THIS was an action brought by *George H. Miller* against *Keturah V. Morrison,* and Frank E. Shaw as sheriff of Atchison county, to restrain the defendants from enforcing and collecting a certain judgment and an execution issued thereon. Mrs. Morrison, who was formerly the wife of Miller, was the judgment creditor; Miller was the judgment debtor; and Shaw had the execution in his hands, had already levied the same upon the property of Miller, and was advertising the property for sale. The case was tried at the January term,

1888, before S. H., judge *pro tem.*, without a jury, and the court made special findings of fact and conclusions of law, which read as follows:

### FINDINGS OF FACT.

"1. At the June term for 1885 of said court, in a case then pending in said court wherein the above-named defendant, Keturah Morrison, then Keturah Miller, wife of George H. Miller, was plaintiff, and said George H. Miller was defendant, a decree of divorce divorcing said parties was rendered on the 30th day of June, 1885, on the cross-petition of the said George H. Miller and by reason of the default [this should be another word] of the wife, said Keturah Miller. The decree granted to said Keturah Miller the custody of their son Harry Miller, then aged two years, and to said George H. Miller the custody of their son Harvey Miller, then aged five years, such custody in each case to continue until the further order of the court. No special provision was made for the support of either of the children, but the wife was awarded absolutely $300 as alimony, to be paid as follows: $100 in sixty days, $100 in one year, and $100 in two years, and such alimony declared and adjudged to be a lien upon the property of the said George H. Miller, described in the petition in this action.

"2. The first of said installments was paid when due. In February, 1886, said Keturah Miller told the plaintiff George H. Miller (who had on several occasions since the divorce tried to induce her to give him the said child Harry Miller) that if he would take the said child and keep him with the other child she would release him from the payment of the last installment, and upon his agreement to do so, took, with the consent of said George H. Miller, both of said children to her home about five miles distant from the home of said George H. Miller, and about five days thereafter returned both of them to said Geo. H. Miller, who has since that time had the custody and full charge and control of said children, and has cared for and kept them at his own expense. There was no definite time agreed upon as to which said Geo. H. Miller was to keep said Harry Miller, but by the acts of the parties and the circumstances succeeding and connected with the agreement it is shown that both parties intended that the mother of said children should not thereafter have anything to do with the custody, care, nurture, education and support of said children.

"3. The second installment of said alimony was paid when due; and the last installment has not been paid, by reason of the agreement between said plaintiff George H. Miller and said defendant Keturah Morrison."

### CONCLUSIONS OF LAW.

"1. Said plaintiff George H. Miller is still liable for the payment of the last installment of said alimony.

"2. The plaintiff is not entitled to the permanent injunction prayed for in this action."

Upon these findings and conclusions the court below rendered judgment in favor of the defendants and against the plaintiff; and the plaintiff, as plaintiff in error, brings the case to this court for review.

*H. M. Jackson,* for plaintiff in error.

*J. T. Allensworth,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: In this state, under all ordinary circumstances, the father and mother of minor children born in lawful wedlock have an equal and joint right to the possession, custody and control of their minor children, and neither has a superior right to the other. (Const. of Kansas, art. 15, § 6; act relating to guardians and wards, § 1; *The State v. Jones,* 16 Kas. 111.) And as a consequence of such equal and joint right, they are also under an equal and joint obligation to care for and to support and educate their minor children. (*Harris v. Harris,* 5 Kas. 45, 50.) In the case just cited, the following language is used:

"But this obligation rests equally upon the mother, and this whether it be regarded as a legal or natural duty; originally it was a purely natural obligation, resting upon both parents alike. At an early period a sanction was added to this natural duty by the statute, 43 Eliz., ch. 2, which directs that, 'The father and mother, grandfather and grandmother of poor, impotent persons, shall maintain them, if of sufficient ability, as the quarter sessions shall direct.' (Black. Com. 448.) This statute, being in aid of the common law and to enforce a natural duty, is adopted in this state by statute. (Comp. Laws of 1862, 678.) This statute makes it alike the duty of

the mother, as of the father, to support their children, and applies only to those unable to support themselves, whether they be minors or not, and makes this duty dependent upon the ability of the ancestor to discharge it; without this ability there is no legal liability."

It will be seen by an inspection of our constitution and statutes, that the rules of the common law with respect to the rights and duties of fathers and mothers with regard to their minor children have been considerably changed and modified in Kansas. The tendency in Kansas has always been toward an exact equality among the sexes under the law. The tendency has been to place all adult persons, male and female, upon the same legal plane so far as such a thing can be accomplished. But while the rights of parents under the laws of Kansas to the custody and control of their minor children are exactly equal, yet neither has such an absolute right in this regard that it may not under particular circumstances, or by contract, or by a decree of a court, be greatly modified or absolutely abrogated. (Act relating to minors, § 5, *et seq.*; Civil Code, § 645; *In re Bort*, 25 Kas. 308; *Chapsky v. Wood*, 26 id. 650; *Walrath v. Walrath*, 27 id. 395; *Strong v. Marcy*, 33 id. 109; *Chandler v. Dye*, 37 id. 765.) We suppose that it will be admitted that the obligation or duty of the plaintiff Miller, to see that his son Harry should be properly supported and cared for, was not completely annulled by the decree rendered in the divorce case; but certainly by such decree his obligation to that effect was made only secondary, and that of his divorced wife Keturah, was made primary; indeed, as between the two, it was her duty alone to support, care for and educate their son Harry. She obtained the right by such decree to Harry's custody and services, and that right carried with it the duty and obligation to support and maintain him. Mr. Bishop, in his work on Marriage and Divorce, has cited the following among other cases: *Husband v. Husband*, 67 Ind. 583; *Pawling v. Willson*, 13 Johns. 192; *Finch v. Finch*, 22 Conn. 411; *Fitler v. Fitler*, 33 Pa. St. 50; and then he uses the following language:

29 — 43 KAS.

. "The true legal principle applicable to cases of this kind seems to be, that the right to the services of the children and the obligation to maintain them, go together; and, if the assignment of the custody to the wife extends to depriving the father of his claim to their services, then he cannot be compelled to maintain them otherwise than in pursuance of some statutory regulation. So where the court granting the divorce and assigning the custody to the wife makes, under authority of the statute, provision for their support out of the husband's estate, he would seem, within principles already mentioned, to be relieved from all further obligation." (2 Bishop, Mar. and Div., § 557.)

We think the decree rendered in the divorce case, giving the custody of the son to the mother, virtually, as between the father and the mother, but without reference to the father's obligations to the son and to the public generally, relieved the father from all obligation to support and maintain his son, and cast the burden of such support upon the mother. In other words, as between the father and the mother, it became the mother's duty entirely by such decree to support and maintain their son, and therefore there was ample and sufficient consideration for the agreement entered into between the father and the mother that, if the father would take the care and custody of the son, she would relieve him from the payment of the $100 still remaining due and unpaid on the judgment rendered in the divorce case; and as the father did take the son under his charge and under such agreement, and has

Divorce—alimony—agreement—judgment, satisfied.

continued to support and maintain him, we think the judgment for such $100 has been completely paid, satisfied and discharged, and therefore that the father should not be further harassed and molested by any attempt to enforce the same. As tending strongly to support this view, see the case of *Walrath v. Walrath*, 27 Kas. 395. See also *Chandler v. Dye*, 37 id. 765.

The judgment of the court below will be reversed, and the cause remanded, with the order that judgment be rendered upon the findings of the court below, as prayed for in the plaintiff's petition.

· All the Justices concurring.