No. 18,654.

EVA M. RIGGS et al., *Appellees*, v. JAMES A. RIGGS,
*Appellant*.

SYLLABUS BY THE COURT.

1. MINOR CHILDREN—*Supported by Divorced Wife—Action to
Compel Contribution Thereto from Divorced Husband—Petition Not Demurrable.* The defendant deserted his wife and
five minor children in Colorado, the state of their residence,
and came to Kansas. The proper court of Colorado granted
the wife a divorce on the grounds of desertion and extreme
cruelty, and awarded her the custody of the children. The
defendant's property, worth less than $100, was given her as
alimony. The decree was based on constructive service and
contained no provision relating to the support of the children.
Without financial assistance from the defendant the mother
of the children, by her manual labor, supported and maintained them, sent them to school, and otherwise discharged
the duties of a parent toward them. As the older ones grew
up and found employment they contributed their earnings
towards meeting the family necessities. The mother brought
suit against the defendant in Kansas to compel him to contribute to the support of his children by reimbursing her for
expenditures she had made for that purpose subsequent to
the divorce. The petition was substantially in the form of a
pleading in equity and set forth in detail all the facts relating
to the situation, circumstances and conduct of the parties.
*Held,* the petition was not demurrable, and on proof of the
facts alleged the plaintiff was entitled to an equitable award
in her favor.

2. SAME—*Former Decisions Approved—Portions of Opinions Disapproved.* The decision and the general doctrine of the case
of *Harris v. Harris,* 5 Kan. 46, are approved and followed.
The decisions in the cases of *Chandler, Adm'r, v. Dye,* 37
Kan. 765, 15 Pac. 925, *Miller v. Morrison,* 43 Kan. 446, 23
Pac. 612, and *Hampton v. Allee,* 56 Kan. 461, 43 Pac. 779, are
approved. Portions of the opinions in the Miller and Hampton cases are disapproved.

Appeal from Allen district court; OSCAR FOUST,
judge. Opinion filed February 7, 1914. Affirmed.

38—91 KAN.

*F. J. Oyler,* of Iola, for the appellant.

*Baxter D. McClain,* of Iola, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one by a divorced wife to compel her former husband to contribute to the support, education and maintenance of their minor children by reimbursing her for expenditures she had made for those purposes subsequent to the decree of divorce.

The parties were married in 1890 in Allen county and afterwards removed to Pueblo, Colo. Six children were born to them. In the year 1909 the defendant, taking the oldest child, a boy, with him, abandoned the remainder of his family and returned to Kansas. On April 18, 1910, the district court of Pueblo county, Colorado, on constructive service, granted the plaintiff a divorce on the grounds of desertion and extreme cruelty. The defendant's property within the jurisdiction of the court, consisting of a frame house, which sold for forty dollars, and the lots on which it stood, which were worth less than twenty-five dollars, were given the plaintiff as alimony. The custody of the five children who were with their mother was awarded to her, but no order respecting their support and maintenance was made. The mother kept the children together, supported them by her manual labor, sent them to school, and fully discharged all the duties of a parent toward them. As they grew up the older ones found work and contributed their earnings toward meeting the family necessities. All this was done without any financial assistance whatever from the defendant.

The plaintiff brought suit against the defendant in Allen county for the purpose stated, the petition being substantially in the form of a pleading in equity which set forth in detail all the facts relating to the situation, circumstances and conduct of the parties. The defend-

ant virtually stood on a demurrer to the petition, which was overruled, the answer merely asserting the conclusive character of the Colorado decree, want of power in the Kansas court to entertain the suit or grant relief, and other legal impediments to recovery. No evidence was offered to controvert the facts alleged in the petition, which were duly supported by the plaintiff's proof.   The plaintiff recovered and the defendant appeals.

The court has no hesitation in declaring, according to what it believes to be the weight both of reason and authority, that the plaintiff was entitled to succeed in her action.   The subject has engaged the attention of the courts to such an extent in recent times that another judicial opinion added to those vindicating the view just announced would be superfluous.   The leading case is *Pretzinger v. Pretzinger,* 45 Ohio St. 452, 15 N. E. 273, in which all the arguments advanced by the defendant in opposition to the judgment of the district court are refuted.   Other cases may be found in 7 A. & E. Ann. Cas. 901; 12 A. & E. Ann. Cas. 137; 14 A. & E. Ann. Cas. 250; 28 A. & E. Ann. Cas. 294; 2 L. R. A., n. s., 851; 8 L. R. A., n. s., 1270.   It will be necessary, however, to discuss briefly some of the earlier decisions of this court.

In the case of *Harris v. Harris,* 5 Kan. 46, decided in 1869, it appeared that a wife obtained a decree of divorce from her husband in January, 1861.   She was given the "custody, nurture, education and care" of her three children.   A fourth child was born two days after the divorce was granted.   Subsequently Harris deeded all his property, consisting of two store buildings and a leasehold interest in the land on which they stood, to his former wife.   From the rents of these buildings she supported herself and the children until March, 1866, when the buildings burned.   By means of her own labor, keeping boarders, and perhaps aid

from others, she continued to support the children
for some time, when she brought an ordinary action in
debt against her former husband to recover the cost
for the preceding three years. The syllabus reads as
follows:

"1. The husband and wife were divorced by the district court of Leavenworth county upon her application, and the custody of the three minor children
were awarded to her. Two days after the decree a
fourth child was born. In an action of debt brought
against the father for the entire support and education
of all the children by the mother: *Held*, that she could
not recover in such action.

"2. That the only way for relief was by opening the
decree as to the children, and making such provision
for them as might be just under all the circumstances,
or by other proper proceedings under or supplemental
to the original decree."

The district court had proceeded upon the theory
that the law imposes upon the father absolutely and
entirely the obligation to support and educate his
minor children and that whoever assumes the duty can
hold the father responsible for the value in a suit at
law. Mr. Chief Justice Kingman, speaking for the
court, disposed of this contention by showing that it
can not be left to a stranger, having the society, obedience, and services of a child, to say what is fitting
for its care, support and education, advance the money
therefor, and in this way conclusively bind the father
to respond to an action of debt. A divorced wife to
whom children are committed may be wealthy and may
occupy a social station which necessitates maintenance
of the children in such a way that the father could not
by any possibility meet her outlay on their behalf. As
between a father who is poor and infirm and a robust,
healthy boy the moral obligation of support may be
reversed. Because the factors which enter into the
solution of the problem of what a father should contribute to the nurture of his children are so numerous

Riggs v. Riggs.

and so varied, the court reached the following con-
clusion:

"Whatever rights she may have under the unfor-
tunate circumstances of the case, can only be obtained
by opening the decree in the divorce case, or by pro-
ceedings based thereon, in which the court can take
into consideration all the facts and circumstances sur-
rounding the parties, and do such full justice as the
case requires, having reference to advances already
made.  In such proceedings equal justice may be done
to all parties according to their abilities, and according
to the interest of the children, and so as to protect the
father from continued and harassing litigation.  For
if a suit could be maintained of the character of the
one before us, a suit could be maintained each day, and
the defendant would be powerless.  If he offered liberal
terms, they might be rejected and be made liable to
some other party who might assume the duty of main-
taining the child.  The suit we indicated as appro-
priate would make a final as well as a just settlement
of the case."  (p. 53.)

This is the essence of the decision in the Harris
case, which has been greatly misunderstood, and is
usually wrongly classified.  It did not decide that a
divorced wife to whom the custody of children has
been awarded may not recover from her former hus-
band for advancements made toward the maintenance
of children subsequent to the divorce.  On the other
hand, the right of the mother and the obligation of the
father were expressly recognized, the language being,
"do such full justice as the case requires, *having refer-
ence to advancements already made.*"  (p. 53.)  Neither
was it decided that the remedy lay with the divorce
court alone.  The particular action of debt which the
court had before it was brought in the same court which
had granted the divorce and which had personal juris-
diction of the parties.  The decision dealt with that
situation, and it was held that the suit should have been
one of an equitable nature based on or supplemental to
the divorce decree.  The court did not have in mind

the case of a father who absconds from the jurisdiction of the divorce court and so precludes the burdened mother from resorting to it for relief. The obligation of the father being personal, it must be enforced where he can be found or property belonging to him can be appropriated. But since the obligation does exist, and exists in favor of the mother, the law is not so impotent as to leave her remediless.

In the case of *Chandler, Adm'r, v. Dye,* 37 Kan. 765, 15 Pac. 925, the divorced wife undertook to enforce her claim by filing in the probate court an account of the items of her expenditures against the estate of her deceased former husband—to all intents and purposes a simple action of debt condemned in the Harris case. On appeal to the district court, she was allowed to file a petition, which was afterwards amended. Instead of converting the action into one of the character recommended in the Harris case, she pleaded a contract. Being unable to establish a contract by proof, her action failed.

In the case of *Miller v. Morrison,* 43 Kan. 446, 23 Pac. 612, the husband procured a divorce from his wife on account of her misconduct, in an action which she had commenced. He was given one child and she another, which was but two years old, until further order of the court. No special provision for the support of the children was inserted in the decree. Other essential facts and the decision of the court are stated in the syllabus.

"A decree of divorce was rendered and the custody of a minor son was given to the mother, and the father was required to pay to the mother $300. Of that amount $200 was afterward paid, and afterward the father and mother entered into an agreement that if the father would take the care and custody of the minor son, the mother would relieve him from the payment of the other $100 still remaining due and unpaid; and the father in pursuance of such agreement did take such son under his charge, and continued to support and maintain him. *Held,* That the agreement was

valid, and that these transactions had the effect to pay, satisfy and discharge the judgment for the remaining $100."

In finding a consideration for the contract Mr. Justice Valentine, speaking for the court, used the following language:

"In this state, under all ordinary circumstances, the father and mother of minor children born in lawful wedlock have an equal and joint right to the possession, custody and control of their minor children, and neither has a superior right to the other. . . . And as a consequence of such equal and joint right, they are also under an equal and joint obligation to care for and to support and educate their minor children. . . . But while the rights of parents under the laws of Kansas to the custody and control of their minor children are exactly equal, yet neither has such an absolute right in this regard that it may not under particular circumstances, or by contract, or by a decree of a court, be greatly modified or absolutely abrogated. . . . We suppose that it will be admitted that the obligation or duty of the plaintiff Miller, to see that his son Harry should be properly supported and cared for, was not completely annulled by the decree rendered in the divorce case; but certainly by such decree his obligation to that effect was made only secondary, and that of his divorced wife Keturah, was made primary." (pp. 448, 449.)

The case was well decided on these grounds. The writer of the opinion, however, sought to strengthen it by the views expressed in the current edition of Bishop on Marriage and Divorce, and proceeded as follows:

"Indeed, as between the two, it was her duty alone to support, care for and educate their son Harry. She obtained the right by such decree to Harry's custody and services, and that right carried with it the duty and obligation to support and maintain him. Mr. Bishop, in his work on Marriage and Divorce, has cited the following among other cases: *Husband v. Husband*, 67 Ind. 583; *Pawling v. Willson*, 13 Johns. 192; *Finch*

*v. Finch,* 22 Conn. 411; *Fitler v. Fitler,* 33 Pa. St. 50; and then he uses the following language:

" 'The true legal principle applicable to cases of this kind seems to be, that the right to the services of the children and the obligation to maintain them, go together; and, if the assignment of the custody to the wife extends to depriving the father of his claim to their services, then he can not be compelled to maintain them otherwise than in pursuance of some statutory regulation. So where the court granting the divorce and assigning the custody to the wife makes, under authority of the statute, provision for their support out of the husband's estate, he would seem, within principles already mentioned, to be relieved from all further obligation.' (2 Bishop, Mar. and Div., § 557.)

"We think the decree rendered in the divorce case, giving the custody of the son to the mother, virtually, as between the father and the mother, but without reference to the father's obligations to the son and to the public generally, relieved the father from all obligation to support and maintain his son, and cast the burden of such support upon the mother." (p. 449.)

In the case under decision the decree of the Colorado court can not be interpreted in the same way as the Miller decree. The mother was not at fault and both parties were not before the court. The court had no jurisdiction of James A. Riggs and consequently could make no order affecting his legal duty to support his offspring. It could neither obligate him nor relieve him from his obligation, and consequently he can not say that his duty was either extinguished or made secondary to that of the children's mother. Besides this, the court was not undertaking to make a fair and equitable adjustment of the rights of the two parents by considering the benefits to accrue to the mother from the society and services of the children in relation to the financial burden which their support and education would entail. It found some minor children deserted by their father within the circle of its protection and merely gave their legal custody to the person whom nature and the law suggested as their proper guardian.

But if the court had possessed full jurisdiction over the defendant the decree would not, under the laws of Colorado, which were pleaded and proved, have relieved him from his duty to support his children.

"It is unnecessary to consider many of the questions which have been ably discussed by counsel. It is sufficient to say that we think the court below correctly ruled that the plaintiff in error was not relieved of his obligation to furnish necessary support for his minor children by reason of being deprived of their care and custody by the decree in the divorce proceeding, and also correctly held that the judgment for alimony in that case was not *res adjudicata* as to the extent of his liability for their support.

"There is a diversity of opinion among courts of equal eminence upon the first proposition, some holding that the right to the services of the children and the obligation to maintain is reciprocal, and that a decree denying the father their custody and the right to their services relieves him of his common-law obligation to support them. The doctrine of these cases is expressed by Mr. Bishop at section 557, volume 2 (5th ed.) of his treatise on Marriage and Divorce. . . . Others announce, what we believe to be the better doctrine, that the obligation of a father to provide reasonably for the support of his minor children until the latter are in a condition to provide for themselves, is not impaired by a decree which, on account of his own misconduct, deprives him of their care and custody. In other words, the father can not plead his own wrong as an excuse for relieving himself from his obligation." (*Graham v. Graham,* 38 Colo. 453, 456, 457, 88 Pac. 852.)

It may be remarked here that in the last edition of his work Bishop qualified his position that the right to custody and services carries with it the duty to support.

"There have been differences of opinion, amounting in some instances to a stumbling on the 'not-thought-of' rock, as to the effect of a decree simply giving the custody to the wife, yet silent as to the maintenance. . . . We have one case in which the court decided that because after the decree 'he had no right, either to take the child and support it himself, or to employ any one else to support it, without the mother's con-

sent,' he was not answerable for necessaries furnished by a third person. But it was his own wrong that deprived him of the custody. And it is fundamental, equally in our law and in natural reason, that no one can cast off an obligation by refusing to keep it, or any duty by any evil doing. Therefore a better-reasoned case holds that the duty of support 'is not to be evaded by the husband's so conducting himself as to render it necessary to dissolve the bonds of matrimony, and give to the mother the custody and care of the infant offspring. It is not the policy of the law to deprive children of their rights on account of the dissensions of their parents, to which they are not parties; or to enable the father to convert his own misconduct into a shield against parental liability.' " (2 Bishop, Marriage, Divorce and Separation, § 1223.)

What this court conceives to be the correct view was well expressed by the Maryland court of appeals.

"There may be and doubtless are many cases where the right to the custody and services of the children are taken away from the father because of his misconduct. His natural right to this custody and these services is forfeited by his misconduct, and surely if his misconduct works a forfeiture of his rights to custody and earnings, he ought not to be absolved from his natural and usual duty of supporting them. To allow it to bring about any such result would simply be allowing the father to take advantage of his own wrong, for all a father would have to do to avoid his natural obligation to his children would be to desert his family, conduct himself in such a way as to show that he is an unfit person to have the custody of his children, and then, when on account of his own wrongful doings and unfitness, the court takes the custody of the children away from him, and awards it to the mother, it relieves him of the obligation which the law of nature and the law of the land places upon him." (Alvey v. Hartwig, 106 Md. 254, 262, 67 Atl. 132.)

It is the public policy of this state, established by the legislature, to leave the courts perfectly free to enforce parental duty, after a divorce, as justice and

occasion may demand.  Section 672 of the civil code reads as follows:

"When a divorce is granted the court shall make provision for the guardianship, custody, support and education of the minor children of the marriage, and may modify or change any order in this respect whenever circumstances render such change proper."

Interpreting this statute, the court said:

"This section leaves the matter entirely in the hands of the court.  It may at any time, upon proper notice, change any former order made with reference to these matters by adding to, or taking from, the burdens of either party relative to the same. . . .  This statute has the effect to repose in the court the right and duty to require divorced parents properly to care for, maintain and educate their children, notwithstanding the fact of the divorce, and to make such orders relative to payments of money from time to time until this result has been fully effectuated.  Such orders may be made by the court upon its own motion, or upon the suggestion of any one immediately or remotely interested." (*Miles v. Miles*, 65 Kan. 676, 678, 679, 70 Pac. 631.)

If the courts were obliged to acknowledge a fundamental dependence of the duty to support upon the right to custody they would be embarrassed continually in carrying out this policy.

In the case of *Hampton v. Allee*, 56 Kan. 461, 43 Pac. 779, the divorced wife sued her former husband for compensation for the support of their minor children, basing her right to recover on the terms of the divorce decree, a copy of which was attached to the petition.  The decree did not contain terms of the character alleged and in fact imposed no liability on the defendant to support his children.  The court affirmed a judgment sustaining a demurrer to the petition.  The decision was correct, but the opinion of the court contains the unnecessary and erroneous statement that "it has been held that no such liability exists independent of the decree" (p. 463), citing the Harris

case. Neither the syllabus nor the opinion in the Harris case so holds.

From what has been said it results that the decision and the general doctrine of the Harris case are approved and followed. The decisions in the Chandler, Miller and Hampton cases are approved; but the portions of the opinions in the Miller and Hamption cases which have been criticized are disapproved.

In the case of *McCormick v. McCormick*, 82 Kan. 31, 107 Pac. 546, which reviewed previous decisions on the subject and has since been followed in other cases, the court considered the effect of a foreign decree of divorce which was silent on the subject of alimony and held that it precluded the courts of this state from subsequently allowing alimony to the divorced wife out of the property of her former husband. The defendant argues that the same rule should be applied here. The argument is unsound because of the fundamental difference between marital and parental duty. After a divorce the relation of husband and wife is at an end, and all marital obligations not preserved by the decree are at an end. After a divorce the relation of parent and child continues unchanged, and a father's obligation to support his offspring continues to exist unless cut off by the decree. Besides this, in the McCormick case the court had jurisdiction to award alimony if it had been applied for. In the present case the court could not have made a valid order of support against the defendant if the plaintiff had applied for it.

The defendant invokes the federal constitution and the statute of this state relating to the faith and credit to be given to the judicial proceeding in Colorado. The judgment of the district court not only gives full faith and credit to that proceeding but gives it the precise effect which it has under the laws of Colorado.

The judgment of the district court and this opinion deal with the broad parental duty to support and maintain minor children and not with the subject of supply-

ing the immediate wants of necessitous children on the credit of a delinquent parent.

From what has been said it is clear that a jury trial was properly denied. Trial errors complained of are not of sufficient importance to affect the result of the proceeding or to require special discussion.

The judgment of the district court is affirmed.