No. 42,336

HELEN ROSE ALLISON, *Appellee,* v. JAMES A. ALLISON, *Appellant.*

(363 P. 2d 795)

Opinion filed July 17, 1961.

*Mearle D. Mason,* of Wichita, argued the cause, and *Theodore H. Hill,* of Wichita, was with him on the brief for the appellant.

*Robert H. Nelson,* of Wichita, argued the cause, and *W. A. Kahrs, H. W. Fanning* and *Richard C. Hite,* all of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal by the husband in a divorce action from an order of the trial court increasing support payments for a minor child.

The appellee, Helen Rose Allison, obtained a decree of divorce from the appellant, James A. Allison, in the district court of Sedgwick County, Kansas, on the 3rd day of August, 1949. In addition to granting the divorce, the decree gave custody of the minor child of the parties, Ashley Allison, to the appellee and directed the appellant to pay the sum of $50 per month for the support and maintenance of the child.

On the 29th day of August, 1960, the trial court heard evidence upon the appellee's application for an increase in child support payments, and to require the appellant to make financial arrangements to provide funds sufficient to guarantee a suitable college education for the minor child, and other matters. After taking the case under advisement the trial court on the 15th day of September, 1960, made his findings and entered an order, which insofar as material herein reads:

"[1] IT IS BY THE COURT CONSIDERED, ORDERED AND DECREED that the said defendant, James A. Allison, be and he is hereby ordered to pay to the plaintiff, payment being made through the Clerk of the District Court, for the month of September, and on or before the 15th day of each month thereafter, subject to the further order of this court, the sum of $125.00 per month, until further order of said court, for the support and maintenance of the minor child, Ashley Allison.

"[2] IT IS FURTHER ORDERED that the defendant, James A. Allison, shall forthwith establish in some banking institution in the City of Wichita, Kansas, an account to provide funds for the proper education of his minor child; said defendant shall during the month of October, 1960, deposit the sum of $50.00 and a like sum shall be deposited in said fund each month thereafter up to and including the month of November, 1963; said account to be so arranged so that same will draw interest on funds so deposited. Within one year after said minor child graduates from high school and enrolls in a college, said minor child shall be entitled to withdraw from said fund, the sum of $75.00 per month so long as she remains enrolled in college or until the fund and accumulated interest thereon is depleted. In the event said minor child shall not enroll in college following graduation from high school or should she voluntarily withdraw from college after having enrolled, the balance of said fund remaining on deposit shall thereupon be made payable to said defendant, his heirs or assigns.

"[3] IT IS FURTHER ORDERED that the said defendant, James A. Allison, shall forthwith take the necessary steps to provide that the said minor child shall be named as beneficiary of one-half of the defendant's $10,000.00 government insurance policy or policies and she shall remain as the designated beneficiary in said policy until graduation from college or having reached the age of 25; upon said minor child reaching the age of 25 or having graduated from college, whichever happens first, said defendant shall thereupon have the right to change the beneficiary on said policy as he deems advisable.

"It is Further Ordered that in the event the defendant, James A. Allison, shall die prior to the minor child having completed her college education and while she is enrolled in a college, such amount as may have accumulated in the fund in the banking institution for the education of said minor shall be thereupon immediately payable to said minor. Provided, further however, in the event said minor child shall die prior to having completed her college education or prior to the depletion of said funds, thereupon said funds shall be payable to the defendant, his heirs or assigns.

"[4] It is Further Ordered that James A. Allison shall pay to the Clerk of the District Court, the sum of $100.00 as attorney's fees for plaintiff's attorneys; same being for legal services rendered in the presentation of said motion."

Appeal has been duly perfected from the foregoing order presenting questions relating to each of the foregoing paragraphs which have been numbered for clarification.

The appellant contends the increase of child support payments from $50 a month to $125 a month is an abuse of discretion by the trial court, and not warranted by the facts disclosed at the hearing. It is the appellant's position that prior to the time this divorce was granted some years back, the parties had not accumulated property of any substantial character, but were living on a gross income in the amount of $400 a month, which the appellant received as an oil field worker. At the hearing the appellee frankly admitted she merely wanted to maintain the same standard of living that she did prior to the time she received the divorce.

The appellee has had the custody of the child and testified that she has lived with her mother and father for a long period of time. The total rent paid for a two-bedroom duplex in which they lived was $150 per month. Of this amount the appellee paid $50 a month for herself and the child, who at the time of the hearing was fourteen years of age. The appellee further testified she spent at least $100 per month over the $50 supplied by the appellant for the support of the child, and that she was employed receiving an income of $268.65 "take-home" pay per month.

Since the divorce the appellant has remarried and is supporting his present wife and her two children, who are fourteen and sixteen years of age, respectively. They now have an additional child of their own. The appellant testified he had been in business together with his father and brother, the business being known as the A. D. Allison Oil Company; that at the present time he was an oil producer and is just starting in the ranching business. He testified that he had traded for a house and ranch in El Dorado, Kansas, and was trying to sell the real property in Wichita where he had resided

in which he had a $2,500 equity. He traded a one-sixteenth interest in fifteen oil wells on an appraisal basis of $65,000 for the equity in a 1,000-acre ranch and assumed a $50,000 mortgage. The ranch has been stocked with registered cattle purchased from the Turner Ranch in Oklahoma, and he placed a value of $42,000 upon his cattle and $120,000 upon the ranch. His testimony further disclosed that his oil properties and the cattle were mortgaged. His balance sheet as of July 1, 1960, indicates gross assets in the sum of $269,640.60, which after deducting liabilities discloses a net worth of $107,212.59. Among the assets was approximately $16,000 cash on hand in bank accounts which he described as operating capital for his business.

The appellant testified his monthly income from oil "varies, around four to five thousand dollars." His total income for the year 1959 on the income tax return from oil was in the gross sum of $71,000 and the return showed a net income of $10,000. Adjusted gross income was in the amount of $26,800 and there was a depletion allowance in addition of $19,000.

The foregoing gives a brief summary of the evidence presented. The record discloses the testimony of the witnesses and the evidence in far more detail than is necessary to set forth herein.

The appellant contends his net income at the present time budgeted for living expenses is $550 a month, after he pays the mortgages due on the ranch in Butler County, Kansas, and after he pays for the other outstanding obligations, which call for monthly, semi-annually or yearly payments. In his brief he argues:

". . . Because of the orders of the court, the entire financial structure created by the defendant and his present wife and all they have accumulated, is jeopardized. If the defendant should not make the monthly, semi-annually or yearly payments as specified, he stands to lose all the gains that he has made during the past four years. At the present time he is attempting to stabilize his income by diversifying his interest. It will be approximately two years before any receipts can be had from the ranch which the defendant now owns. The defendant has been unable to discover any new oil fields that are of a paying nature and he has and is operating at the present time at a loss of $12,000.00 to $13,000.00 a year. . . ."

In *Harris v. Harris*, 5 Kan. 46, the right of the mother and the obligation of the father in a divorce action were expressly recognized to the extent that the trial court must do such full justice as the case requires. In such proceedings it was said equal justice may be done to all parties *according to their abilities, and according*

*to the interest of the children.* This general doctrine was approved in *Riggs v. Riggs,* 91 Kan. 593, 138 Pac. 628, where Justice Rousseau A. Burch speaking for the court carefully analyzed earlier decisions of the court. Portions of some of the opinions were criticized and disapproved.

In this state, under all ordinary circumstances, the father and mother of minor children born in lawful wedlock have an equal and joint right to the possession, custody and control of their minor children, and neither has a superior right to the other. As a consequence of such equal and joint right, they are also under an equal and joint obligation to care for and to support and educate their children. But while the rights of parents to the custody and control of their minor children are exactly equal, yet neither has such an absolute right in this regard that it may not, under particular circumstances, be greatly modified or absolutely abrogated. (*Miller v. Morrison,* 43 Kan. 446, 23 Pac. 612; and *Riggs v. Riggs,* supra.)

In divorce actions the fundamental difference between the marital and the parental duty of parents is that after a divorce the relation of husband and wife is at an end, and all marital obligations not preserved by the decree are at an end, while the relation of parent and child continues unchanged, and a father's obligation to support his offspring continues to exist unless cut off by the decree. (*Riggs v. Riggs,* supra.)

The public policy of this state established by the legislature is to leave the courts perfectly free to enforce parental duty, after a divorce, as justice and occasion may demand.

Our statute, G. S. 1959 Supp., 60-1510, provides in pertinent part:

"When a divorce is granted the court shall make provisions for the guardianship, custody, support and education of the minor children of the marriage, and, . . . may modify or change any order in this respect whenever circumstances render such change proper. . . ."

The above portion of this section of the statute has been interpreted in the following language:

"This section leaves the matter entirely in the hands of the court. It may at any time, upon proper notice, change any former order made with reference to these matters by adding to, or taking from, the burdens of either party relative to the same; . . .

". . . This statute has the effect to repose in the court the right and duty to require divorced parents properly to care for, maintain and educate their children, notwithstanding the fact of the divorce, and to make such orders relative to payments of money from time to time until this result has been fully effectuated. Such orders may be made by the court upon its own mo-

tion, or upon the suggestion of any one immediately or remotely interested." (*Miles v. Miles,* 65 Kan. 676, 678, 679, 70 Pac. 631.)

The foregoing language was quoted in *Riggs v. Riggs,* supra, and this interpretation has subsequently been followed. (*Sharp v. Sharp,* 154 Kan. 175, 117 P. 2d 561, and authorities cited therein.) One of our most recent decisions is *Grunder v. Grunder,* 186 Kan. 766, 352 P. 2d 1067.

The trial court in the instant case could not have been oblivious to the fact that continued payments of principal on the mortgage indebtedness of the appellant gradually enhanced the value of his net estate, and actually reflected *ability* to support his child far in excess of the $50 per month which had previously been ordered. Upon careful analysis of the record presented for review, we think the trial court was well within the bounds of the evidence and its realm of discretion when child support payments were increased to $125 per month.

The appellant contends the award of support money was, in effect, retroactive for the month of September, 1960. This point is not well taken.

It has been recognized that a district court has power to modify or change any previous order with respect to payments for the support and education of a minor child of the marriage whenever circumstances render such change proper, but any new order cannot increase or decrease amounts past due. (*Sharp v. Sharp,* supra, and authorities cited therein.)

If at all possible, the order of the trial court should be so construed as to uphold its validity. Here the order increasing child support payments was entered on the 15th day of September, 1960, and the increased amount was ordered payable for the month of September. It must be noted the date for making payments was "on or before the 15th day of each month thereafter." Payment of child support at the rate of $50 per month was payable up to September 15, 1960, and the order changing support payments to $125 per month must be construed to become effective from and after the 15th day of September, 1960. So construed the order is not retroactive.

Paragraphs numbered [2] and [3] of the trial court's order will be considered together.

The appellant contends the order requiring him to establish a trust fund for the education of the minor child and to pay the

sum of $50 each and every month into said trust fund is invalid as well as being excessive, because the order creates a trust for the minor child in an event that may never happen, and provides support for her beyond the age of her majority. The appellant further contends with respect to paragraph [3] of the order that it makes the appellant change a life insurance policy so that the child would be the beneficiary under the terms of the policy for one-half of the proceeds until she reaches the age of twenty-five years or graduates from college, and is therefore invalid as well as being an abuse of discretion on the part of the court.

Where a divorce has been granted it has been held 60-1510, *supra*, authorizes making provision for the children of the marriage only during their minority. (*Emery v. Emery*, 104 Kan. 679, 180 Pac. 451; and *Sharp v. Sharp*, supra.)

On this point the appellee concedes the portion of the order which carries the beneficiary of the life insurance policy beyond the age of majority is invalid, and it is suggested that portion of the order should be amended or sent back for modification by the trial court so that it will not exceed the age of majority of the minor child.

At the time of the hearing the appellant had two insurance policies totaling $110,000 in principal sum payable in the event of the appellant's death to his present wife as beneficiary. The trial court ordered the appellant to name the minor child in question as beneficiary of one-half of his $10,000 government insurance policy. Undoubtedly, the trial court was of the opinion that some arrangement should be made in order to adequately assure the appellant's first child that she would have an equal opportunity for a college education with the stepchildren of the appellant in the event of his death, because in such event no funds would otherwise be available to help with the education of this minor child.

At the time of the proceedings before the trial court the minor child was fourteen years of age, and in all probability will graduate from high school when she is seventeen years of age. Assuming that she enrolls in college, she will be approximately twenty-one years of age if and when she graduates.

As to the order of the trial court requiring the appellant to establish a trust fund beginning with the month of October, 1960, and deposit the sum of $50 per month up to and including the month of November, 1963, it can hardly be said to continue beyond

the age of the child's majority. On the basis of the order, there will be accumulated a total fund of $1,800 plus what interest said funds may draw. In the event this child enters college, she will be permitted to withdraw from such fund the sum of $75 per month. This is a withdrawal of $900 per year. It is apparent that such withdrawals will deplete this fund in approximately two years. Thus, if the child graduates from high school at the age of seventeen, the fund will be entirely depleted at her attained age of nineteen years. In the event she does not enroll in college, or shall voluntarily withdraw after having enrolled, the order specifically provides that the money in this fund is to be returned to the appellant, his heirs or assigns.

In *Kelly v. Kelly*, 105 Kan. 72, 181 Pac. 561, the court upheld an order in a divorce action, which dealt with the parents' property by creating a trusteeship during the children's minority and for their benefit, as being authorized by the statute. In the opinion the court said:

". . . In a divorce case, where the welfare of minor children is involved, the trial court's power in dealing with the property of parents is necessarily very broad, and unless that power is obviously abused, its exercise will not be disturbed on appeal. As we construe the decree, if the property is not exhausted during the children's minority, with the approval of the court and by its order, the trusteeship will then be terminated, and the title will revert to its status prior to the date of the decree. . . ." (pp. 74, 75.)

Similarly, in *Smith v. Smith*, 104 Kan. 629, 180 Pac. 231, the court had before it an action by a father to recover from his children the possession of real estate, the rents and profits of which under a decree of divorce had been set aside for the support of the minor children. In examining the provisions of the former decree it was held the children's rights to the rents and profits ceased when the youngest child attained majority, and that the father was entitled to the possession of the land.

The order of the trial court herein fails to consider the contingency of the appellant's death prior to the child's graduation from college or prior to attaining the designated age regarding the proceeds of the insurance policy. If the child does not enter college, or drops out after enrollment, and the appellant dies prior to her age of majority, the minor child is entitled to the insurance proceeds. The question thus arises whether the court has created an estate for the permanent benefit of the minor child.

In *Emery v. Emery,* supra, it was held:

"The statute authorizing the court upon granting a divorce to provide for the guardianship, custody, support and education of the minor children of the marriage, contemplates making provision for the children only during their minority, *and grants no power to transfer any of the property of either parent to the children for the purpose of creating an estate for their permanent benefit.* A part of a decree attempting to do this is wholly void .and open to collateral attack." (Syl. ¶ 1.) (Emphasis added.)

The foregoing case was cited with approval in *Hayn v. Hayn,* 162 Kan. 189, 175 P. 2d 127. There, however, the father consented to the transfer of the insurance policies, and the court said in the opinion:

"Appellant argues the assignment of the policies created·an estate for the minor child out of the father's property and thus provided support for the child which might continue beyond the minority of the child. It is contended the creation of such an estate is invalid, citing *Emery v. Emery,* 104 Kan. 679, 180 Pac. 451. That decision, when applicable, is sound. Here, however, an estate for the child is not created out of the father's property against his will. *The father has consented to the irrevocable assignment of the policies and has agreed to continue to pay the premiums thereon for the benefit and protection of his child.*" (p. 196.) (Emphasis added.)

· For other decisions where the parties have agreed to action of the character here in question by contract, holding a judgment carrying out its terms and putting them into force and effect to be valid, see *Feldmann v. Feldmann,* 166 Kan. 699, 707, 204 P. 2d 742, and cases cited therein.

By giving recognition to the foregoing contingency, the appellant contends the court has in effect successfully created an estate for the child's permanent benefit against the will of the appellant. Technically, this may be true, but it is readily apparent, upon consideration of all the facts and circumstances presented by the record in this case, the dominant factor guiding the trial court's decision was to make adequate provision for the education of the minor child of the parties.

Courts must take judicial notice of changing times and conditions. A college education has gradually become almost a necessity for our young people to find suitable placement in our American society and economy. Where the parents' economic circumstances are adequate it is commonplace to send their children to college. Family budgets are so arranged that for many years prior to a child's actual enrollment in college, funds are set aside in savings accounts and insurance policies purchased to assure a college edu-

cation for the child. We think the provisions of 60-1510, *supra*, are sufficiently broad to authorize a trial court to make provision for the college education of a child, where the evidence shows a plan for such education, as here, and ability on the part of a parent, such as the appellant in this case, to provide such education.

In our opinion, it is proper for a court to require a suitable insurance policy designating the child as beneficiary to assure the child an opportunity for a college education, provided the responsible parent is not bound to continue such policy of insurance beyond the age of the child's majority. Here the order of the trial court authorized the appellant to change the beneficiary in the policy "upon said minor child reaching the age of 25 or having graduated from college." As heretofore noted, the extent to which the trial court required the appellant to carry the minor child as a beneficiary beyond the age of majority is invalid.

On the facts presently before the court, we think it is properly within the discretion of the trial court to make provision for the education of the minor child in question by an order requiring the appellant to establish a trust fund, as herein set forth, and to designate such child as the beneficiary of one-half of the $10,000 government insurance policy, until such time as the child graduates from college or attains the age of majority.

The allowance of $100 attorneys' fees in paragraph numbered [4] of the order for an appearance of the appellee in the court below has been examined, and upon the record here presented, is found to be properly within the discretion of the trial court. (G. S. 1949, 60-1507; and *Bennett v. Bennett*, 175 Kan. 692, 266 P. 2d 1021.)

The case is remanded to the lower court with directions to modify paragraph numbered [3] of its order in accordance with the views expressed herein. As thus modified, the order of the trial court is affirmed.